ALBANY,
August, 1822.
HALLIDAY
v.
MARTINET.

## HALLIDAY *against* MARTINET.

*The protest of a notary, deceased, and a register of protests, kept by him, in which were notes and me-moranda in his hand wri-ting, proved by a witness, stated that the notary had made diligent search and in-quiry after the maker of a note, in the city of New-York, (where the note was dated,) in or-der to demand payment of him, and that he could not be found, &c. and that no-tice of non-payment, for the indorser, was put in the post-office: Held, that this was suf-ficient evi-dence of due diligence as to*

IN ERROR, to the Court of Common Pleas, or May-or's Court, of the city of *New-York.*

*Halliday* brought an action of *assumpsit* against *Martinet*, in the Court below, as indorser of two promissory notes ; the one dated the 2d of *July*, 1814, at *New-York*, made by one *De Bruges*, for one hundred dollars, payable to the defend-ant, or order, sixty days after date ; the other, of the same date, for the same sum, payable to the defendant, four months after date. The declaration averred, that after the notes became due and payable, to wit, &c. " diligent search and inquiry was made after *De Bruges*, the maker, at the city of *New-York*, and elsewhere, to wit, at the place afore-said, in order that the said note might be presented and shown to him, for payment thereof, but that he could not, on such search and inquiry, be found, nor did he then, or any time since, pay or cause to be paid the said sum of mo-ney, &c. ; of all which premises, the defendant then and there had notice. By means whereof," &c. The declara-tion contained a count for goods sold and delivered, the usual money counts, and an *insimul computassent*. The defend-ant pleaded *non assumpsit*. At the trial of the cause, in *July*, 1820, *Thomas M'Lean* was called as a witness for

the demand of payment of the *maker* of the note, but not of a notice to the *indorser*, as the note or *memorandum*, in the *register* of the notary, did not state where the indorser resided, nor to what place the notice to him was directed. But, *it seems*, that if the notary had stated, that the indorser, after diligent search and inquiry, could not be found, that would have been sufficient to entitle the plaintiff to recover against the indorser.

ALBANY,
August, 1822.

HALLIDAY
v.
MARTINET.

the plaintiff, and testified, that on the third of *September*, 1814, and afterwards, he was a clerk to *William Bleecker*, who was the notary public to the *Manhattan Company*, and since deceased ; and that the *protests* produced to the witness, being partly printed and partly written, were subscribed by the said *William Bleecker*, as public notary, and sealed with his notarial seal. The protests stated, that he, *W. B.*, the notary, " made inquiry for *De Bruges*, the maker of the said note, to demand payment, but could not find him." The plaintiff also gave in evidence, " the register of protests," kept by *W. B.* the notary, and which were identified and proved by the witness, entitled " *Manhattan* protests." In this register were inserted copies of the notes and protests, with *memoranda* or remarks, to wit, to the first protest, " 5. Put notice in P. Off. for *P. L. Martinet*, and also left one for him at *Robert Halliday's*, the holder. *T. M'Lean.*" The witness stated, that this memorandum was in the handwriting of the notary, and the signature in the handwriting of the witness. That he had no particular recollection of the transaction ; but from seeing his signature to the memorandum, and from the course of business in the office, he had no doubt that he put a notice, in the usual form, in the post-office, for the defendant, but how the same was directed he did not know ; and that he left one with the plaintiff. The witness presumed, that the inquiry for the maker, was made by *W. B.*, the notary, as there were no initials or other memorandum made on the protest, to denote that such inquiry was made by another person ; but he did not *know* that any inquiry was made. That it was the custom of the office of *W. B.* to leave notice at the residence of the indorser, if they could learn where it was, and if they could not discover it, to put a notice for him in the post-office, and also, to leave one for him at the holder's. That from the course of business in the office, the witness had no doubt but the inquiry was made for the residence of the defendant, and that the same could not be ascertained ; but he could not say whether such inquiry was made by *W. B.*, or the witness, or any other person. To the second protest in the register of the notary, was subjoined the following : " *W. B.*" " Remarks." " 7. Left notice for *P. L. Martinet*, at *R.*

*Halliday's.* Noticed holder, *A. W. B.*" " 7. Put notice for *Martinet* in post-office. *W. B.*" *A. W. Bleecker,* who was examined as a witness for the plaintiff, testified, that he was the son of *W. B.*, the notary, deceased, and that on the 7th of *November*, and before and afterwards, acted as his clerk. That the initials *W. B.*, in the margin, were in the handwriting of the said *W. B.*, deceased ; and the witness, therefore, supposed, that the inquiry for the maker of the note was made by the said *W. B.* That the " remarks," or *memoranda*, and the initials *W. B.*, are, also, in the handwriting of the said *W. B.*, and that the initials *A. W. B.*, subscribed to one of them, were written by the witness at the time. That the witness had no recollection of this particular transaction ; but, from seeing his initials to the memorandum, he had no doubt that he left the usual notice for the defendant at the plaintiff's ; and noticed the holder of the note, as stated in the memorandum. That it was the custom of the office to leave a notice at the residence of the indorser, if they could learn where it was; and if they could not discover it, to put a notice for him in the post-office, and, also, to leave one at the holder's. That from the course of business at the office, the witness had no doubt but that inquiry was made for the residence of the defendant, and that the same could not be ascertained. But the witness could not say, whether such inquiry was made, and, if made, whether it was made by *W. B.*, or by the witness, or by any other person. The counsel for the plaintiff, also, offered in evidence a book, entitled " *Longworth's American Almanac, New-York Register, and City Directory,*" commencing on the 4th of *July*, 1814 ; by which it appeared, that the 4th of *September* and the 6th of *November*, in that year, were Sundays ; and the counsel offered the " directory" part of the book to show, that neither the names nor places of abode of *De Bruges*, the maker, and *Martinet*, the defendant, were inserted therein ; but the Recorder refused to permit the book to be read in evidence for. that purpose. *P. M. Stollenwerck*, a witness for the plaintiff, testified, that the defendant, in 1814, had not any family, nor any house, shop, counting-room, or office, in the city of *New-York;* and was an apprentice to Messrs. *Stollenwerck*

*and Brothers,* jewellers in *New-York,* and had been for the greater part of the time absent from the city, being employed by them to go to the southward to vend merchandise. When he returned to *New-York,* he staid no longer than was sufficient to settle his accounts, and was sent again with a new supply of merchandise to the southward, as before. That when he was in the city, he usually staid at the house and store of the said *S. and Brothers.* The witness could not say whether or not the defendant was in the city on the 5th of *September* and the 7th of *November,* 1814.

The counsel for the defendant insisted, that the evidence produced by the plaintiff, was not sufficient to entitle him to go to a jury, and moved for a nonsuit : and the Recorder, being of that opinion, directed the plaintiff to be called and nonsuited. The plaintiff's counsel excepted to the opinion of the Recorder, and tendered a bill of exceptions, &c. on which the writ of error was brought returnable to this Court.

*G. Griffin,* for the plaintiff in error, contended, 1. That the *City Directory* was evidence, for the purpose of showing that the defendant had no fixed house, office, or domicil, in the city of *New-York.*

2. That the evidence of *notice* to the defendant, as indorser of the note, was sufficient. The circumstances of the case were a little peculiar, perhaps, and it might not, therefore, be easy to find any adjudged case, precisely in point; but there were several cases very analogous, and the principle on which they were decided would be found applicable to the present. He cited *Welsh* v. *Barrett,* 15 *Mass. Rep.* 380. *Pritt* v. *Fairclough,* 3 *Camp. N. P. Rep.* 305. *Hagedon* v. *Reid, Id.* 379. note. *Price* v. *Torrington,* 1 *Salk.* 285. *Pitman* v. *Maddox,* 2 *Salk.* 690. *Bateman* v. *Joseph,* 2 *Camp. N. P. Rep.* 461. *Chapman* v. *Lipscombe,* 1 *Johns. Rep.* 294. *Miller* v. *Hackley,* 5 *Johns. Rep.* 375.

3. But whether due notice or not, was a question of fact, which ought to have been left to the jury.

*Anthon,* contra, said, that in *Welsh* v. *Barrett,* there was much stronger evidence of the duty of the officer having

been performed, than in the present case.   After the plaintiff had proved that the defendant was in the employ of Messrs. *Stollenwerck and Brothers*, and that his place of business was at their shop, he ought, at least, to have proved that notice had been left there.   It does not appear whether the notice put into the post-office was directed to any particular place, or out of the city. (*Anderson* v. *Drake*, 14 *Johns. Rep.* 114.)

WOODWORTH, J., delivered the opinion of the Court.

This is a writ of error to the Mayor's Court of *New-York*.   On the trial, the *Recorder* directed a nonsuit, on the ground that the evidence offered by the plaintiff was not sufficient to support the issue.

The first question is, whether due diligence has been used to demand payment of the maker.   If it has, then, whether there is competent evidence to charge the indorser?

The notes were protested in 1814, by *William Bleecker*, a notary, now deceased.   The protest states, that he went with the original notes, and made inquiry for *De Bruges*, the maker, in order to demand payment; but he could not find him.   The notes are dated in *New-York*, and there is no evidence that the maker resided elsewhere.   If the notary had been living, and testified to the facts contained in the protest, it would have been, *prima facie*, sufficient to show reasonable diligence to demand payment of the maker. (*Stewart* v. *Eden*, 2 *Caines' Rep.* 121.)   In *Welsh* v. *Barrett*, (15 *Mass. Rep.* 380.) the question was fully discussed, whether the *book* of the *messenger* of a bank, who was dead, in which, in the course of his duty, he entered *memoranda* of demands and notices, could be received in evidence of a demand on the maker, and notice to the indorser.   The Court admitted the evidence, considering the principle as founded in good sense and public convenience.   "What a man has said, when not under oath, may not, in general, be given in evidence, when he is dead ; because his words may have been misconstrued, or misrecollected, as well as because it cannot be known that he was under any strong motive to declare the truth.   But what a man has actually done, and committed to writing, when under obligation to

do the act, it being in the course of the business he has undertaken, and he being dead, there seems to be no danger in submitting to the consideration of a jury."

In *Price* v. *The Earl of Torrington*, (1 *Salk.* 285.) the evidence given to charge the defendant was, that the usual way of the plaintiff's dealing was, that the draymen came every night to the clerk of the brew-house, and gave him an account of the beer they had delivered out, which the clerk set down in a book kept for that purpose, to which the draymen set their hands ; and that the drayman was dead, but that this was his hand set to the book : this was held good evidence of a delivery. In *Pitman* v. *Maddox*, (2 *Salk.* 690.) *Holt*, Chief Justice, allowed a shop book for evidence, on proof of the servant's hand, who made the entries, and that he was dead, and that he was accustomed to make the entries ; no proof was required of the delivery of the goods. So, also, in *Pritt* v. *Fairclough*, (3 *Camp. N. P. Rep.* 305.) it was held, that an entry by a deceased clerk of the plaintiff, in a letter book, was admissible evidence, under the circumstances of that case, of the contents of a letter. Lord *Ellenborough*, on that occasion, observes, " the rules of evidence must expand according to the exigencies of society." In 3 *Camp. N. P. Rep.* 379. the same doctrine is recognised. The entry of the deceased clerk of a merchant, in the letter book, was received in evidence, on proof that it was made in the usual course of business, in the merchant's counting house. I am satisfied, on principle and authority, that the evidence was competent, and that there was due diligence to demand payment of the maker.

The *New-York Directory*, by *Longworth*, was offered in evidence, to prove that neither the name of the maker, nor indorser, was inserted therein. This was properly overruled. If it was evidence, it only proved that neither the maker, nor indorser, rented or occupied a house ; they might have been residents, and lodged in the city, notwithstanding. It did not establish the fact necessary to be made out ; but it was not evidence. For aught that appears, *Longworth* was living, and might have been called. If he was dead, it would not fall within the rule, which I have already considered.

The question, whether sufficient evidence was given to charge the indorser, is attended with more difficulty.

When the holder of a bill does not know where the indorser is to be found, he does not lose his remedy, by not communicating immediate notice of the dishonour of the bill. If he uses reasonable diligence to discover the residence of the indorser, notice given as soon as it is discovered, is due notice of the dishonour of the bill, within the usage and custom of merchants. (*Bateman* v. *Joseph*, 2 *Camp. N. P. Rep.* 461.)

In *Chapman* v. *Lipscombe*, (1 *Johns. Rep.* 294.) the bill was drawn and dated at *New-York ;* there was no evidence that the plaintiff knew that the defendants resided at *Petersburgh*. He inquired at the banks, and elsewhere, and being informed that the drawers resided at *Norfolk*, he sent a notice, by post, to them, and another addressed to them at *New-York*. This was held sufficient, and all that ought to be required.

The evidence for the plaintiff did not bring his case within the principle of these decisions. The book entitled, "*Manhattan* Protests," being the register of protests kept by *Bleecker*, contained memoranda, or remarks, at the foot ; at the bottom of one of the protests there are the following words, in the handwriting of *Bleecker* : " Put notice for *Martinet* in post-office. *W. B.*" Also, the words, " Left notice for *P. L. Martinet* at *R. Halliday's*. Noticed holder. *A. W.B.*"

*Anthony W. Bleecker*, a witness, says, that the last initials were written by him at the time ; that he has no recollection of the transaction, but has no doubt he left the notice as stated ; that it was the custom of the office to leave notice at the residence of the indorser, if they could learn where it was ; and, if they could not discover it, to put a notice in the post-office. He has no doubt that such inquiry was made, but he could not say, whether it was made by any person. This evidence does not prove that the indorser lived in *New-York*, or that he could not be found, or to what place the notice in the post-office was directed. It only proves, what had been the practice of the notary's office heretofore. In the present instance, to allow this to establish the fact, that the indorser could not be found, we must

substitute conjecture and opinion for evidence. The fact, then, is not made out by this witness; and *William Bleecker's* memorandum goes no further than that notice was put in the post-office.

The remarks at the foot of the other protest, subscribed by *M'Lean*, states, that notice was put in the post-office for *Martinet;* but the witness does not know how it was directed. He states, that it was the custom of the office to leave notice at the residence of the indorser, if they could learn where it was, and if they could not discover it, to put a notice for him in the post-office; and he has no doubt inquiry was made for the residence of *Martinet*, and that it could not be ascertained; but he cannot say, that such inquiry was made by *Bleecker*, the witness, or any other person.

*Stollenwerck* proves no material fact. He says, that in 1814, *Martinet* had no family, nor any house or shop, in *New-York*, and that he had been the greater part of his time absent from the city, having been employed to go to the southward with merchandise to dispose of; that when he returned to *New-York*, he remained a sufficient time to settle his accounts, and until he was sent with a new supply; and, when in the city, he staid at, and transacted his business in the house and shop of *Stollenwerck and Brothers*. If inquiry had been made, and particularly of this witness, the holder might have gained information where to direct a notice, if the indorser was not then in *New-York*. It remains wholly uncertain, whether diligent inquiry was made for the indorser, and that he could not be found; and whether he resided in the city of *New-York*, or at what other place. The notice in the post-office was a nullity, unless it appeared that he resided at some place other than *New-York ;* and if he did, then it should appear that the notice was directed to him at such place. If the holder of the note has done all that a diligent and prudent man could naturally and fairly do, under the circumstances, we should be satisfied, and require no more. If the notary had stated, that the indorser could not be found, as he has done with respect to the maker, he would have made out sufficient to entitle the plaintiff to recover; but, to charge a party on a contract

ALBANY,
August, 1822.

which is conditional in its nature, and creates no liability until certain precedent acts are performed, by merely proving the general practice of the office in other cases, accompanied by the opinion of a witness, not resting on any recollection or, knowledge, but manifestly derived from such usual practice only, would, in my judgment, be dangerous and unjust. There could be no security in the administration of justice, if such an innovation on the rules of evidence should receive the sanction of our Courts. We are, therefore, of opinion, that the Recorder decided correctly, and that the judgment of the Court below ought to be affirmed.

Judgment affirmed.