MORRILL S. WHEELER & AL. *v.* A. T. WALKER.

The books of a corporation, although evidence to prove the acceptance of its charter, its organization, election of officers, and other corporate acts, are not admissible in matters of a private nature in support of its own claims against a stranger, nor even against a member who claims adversely, and not under the corporation.

Entries by a person since deceased, made in the usual course of business and by one whose duty it was to make them, and who had no interest to misrepresent the facts, are admissible in evidence.

WRIT dated May 5, 1863.

Assumpsit on the promissory note of defendant dated Aug. 28, A. D. 1861, for $660.25 payable to Paul J. Wheeler or order, on demand with interest annually, on which were sundry indorsements, viz :

"Oct. 14, 1861, rec'd $256.00."
"April 15, 1862, rec'd $152.00 by notes collected."

Both above indorsements were in hand-writing of Paul J. Wheeler. There were two other indorsements in hand-writing of the present cashier, (Mr. Lewis,) of the Sugar River Bank, viz :

"Oct. 22, A. D. 1862, $57.97."
"Jan. 10, A. D. 1863, $75.00."

The plea was the general issue with a set-off.

The evidence in the case tended to show that said Paul J. Wheeler died some time in the summer of 1862, and that, after his death, said note was found among the papers of the bank aforesaid, claimed as assets belonging to them, or as their property ; that said Wheeler had for several years before his death officiated as cashier of said bank. It also appeared, that, on the 22d day of October, A. D. 1862, said Morrill S. Wheeler, one of the administrators on said estate, and the defendant met at the said bank and settled all demands, and as a result of said settlement, the third indorsement on said note and of that date was made, and that it was then further agreed that the defendant should pay the balance due on said note, and that $100,00 of said balance should be paid by the first of January then next. It appeared, that, in pursuance of this agreement, $75,00 was paid by defendant and indorsed on said note as of January 10, 1863.

The defendant denied this settlement, and the parties were at issue about what constituted the first indorsement, how made up, and as to its true date. To explain this part of the case and to sustain his set-off, the defendant offered extracts or transcripts from the bank books, the original entries being admitted to have been in the hand-writing of said Paul J. Wheeler, and by consent of parties were to be used wherever the original entries in said books could be properly used, viz :

The defendant introduced the receipt of said Paul J. Wheeler bearing date Oct. 21, 1861, for $100,00 and also claimed to be allowed certain sums entered on the day book of the bank, as follows :

| | |
|---|---|
| "1861, Sept. 24, 1861, Paul J. Wheeler." | |
| Dept. "A. T. W." | $41,00" |
| "Sept. 28, P. J. Wheeler, A. T. W. | 35,00" |
| "Oct. 14, P. J. Wheeler, 'Walker.' | 80,00" |
| "On Cash Book (trans. from Day Book)" | |
| "Oct. 21, 1861, Paul J. Wheeler," dept. A. T. W. | 100,00" |
| | "$256,00" |

Also defendant offered in the same manner and claimed to be allowed the following sums :

"1861, Nov. 4, Paul J. Wheeler, 'Walker,'      $18,00"
"   "          "                "        9,00"
"Nov. 9, Paul J. Wheeler, dept. "A. T. W."  $35,00"

Upon the aforesaid evidence, plaintiffs contended that the first four items, as before set forth, constituted the first indorsement of $256,00, and that the receipt for $100,00 under date of Oct. 21, 1861, was paid and should not be again allowed.

And the plaintiffs on their part were permitted to show the following entries, for the purpose of showing the discounting of the note, and to explain the payments thereon, and the dates, and to explain the entries offered by defendant from said book, viz :

In discount book was the entry on top of page, "Oct. 8, 1861," and against what was supposed Oct. 11, 1861, "A. T. Walker, No. 4869."

"Cash paid in,                          $660,00"
"Note discounted,                        660,00"

The cashier testified that the figures "4869" represented truly the number of the note in suit which was regularly entered in the book of discounts and as of the aforesaid date ; also that on the Cash Book of the bank, and under the head of *Cash Receipts*, was the entry of cash $256,00 ; on top of page where this entry was found was the date "Nov. 6, cash paid," no other dates on same page, but on the head of next page was "Nov. 12." According to the location of said credit, the estimated time of date would be either Nov. 8 or 9. It was in this form :— "A. T. Walker 4869, $256,00." Defendant objected to the admission of these entries, but the court admitted them.

The entries on books which were adjusted after the death of Wheeler by one of the administrators and the bank officer and the defendant were admitted without objection and show as follows :

"1862, Aug. 20, A. T. Walker dept. S. H. C.   14,00
"        30, A. T. Walker dept.              25,00
    Same date,       "          "            25,00
                                            ───────
                                             64,00
"April 12, 1862, charged to Walker,           5,00
                                            ───────
                                             59,00
"Less interest paid by Walker,                1.03
                                            ───────
                                             57.97

This was the third indorsement on note. The word *dept.* was explained by the present cashier as meaning *deposited.*

It also appeared that the note in suit was secured by mortgage of the personal property of Walker, some or all of which was sold at auction Oct. 15, 1861, and there was a receipt produced by Walker, dated Oct. 21, 1861, for sundry notes all dated Oct. 16, 1861, and made payable to said Wheeler, all amounting to $171.01. These were said to be auction notes. The receipt was signed by said Wheeler, and on the back of the same was entered the following memorandum in Wheeler's handwriting, viz : "There are now in my hands $171.01, to apply on Mr. Walker's note when paid"

(Signed),                "PAUL J. WHEELER."

"Cash $256,00"
"       170.01"

"$426.01 paid towards his note."

This memorandum was claimed by plaintiffs as evidence to show that the $100,00 receipt was included in the indorsement of $256, also as explanatory of indorsement No. 2.

Gilmore, the President of the bank, testified that it was consistent with the usages of the bank, that notes when discounted should be indorsed, and that a short time before this action was commenced, the note in suit was surrendered to the estate of said P. J. Wheeler.

The entries in the bank books purported to be made by Wheeler in his official capacity as cashier, and in the common form as business was done there.

A verdict having been returned for plaintiffs, the defendant moves to set aside the same, and for a new trial, because of the admission, as evidence, of such of the bank entries, made by Wheeler as aforesaid, as tended to make in his own favor, or to favor plaintiff's estate, &c.

*A. & S. H. Edes,* for plaintiff.

*Burke & Wait,* for defendant.

BELLOWS, J. The books are not admissible upon the ground that they are the books of a corporation ; for although such are competent to prove the acceptance of a charter, the organization of the corporation, and the election of officers, and other corporate acts, yet in matters of a private nature they are not admissible in support of its own claims against a stranger, nor even against a member who claims adversely, and not under the corporation. 1 Greenl. Evi. sec. 493, and cases ; 2 Starkie Evi. 298 ; 1 Cowen's Phillips Evi. 422, & 3 do. n. 800 ; *Marriage v. Lawrence,* 3 B. & Ald. 142 ; *Haynes* v. *Brown,* 36 N. H. 567 ; *Commonwealth v. Woelper,* 3 S. & R. 29.

The question, then, is whether the entries in question are admissible as the entries of a person since deceased, made in the regular course of

business; or as part of the entries previously introduced by the defendant. In regard to the first of these questions, it seems to be well settled that entries made in the usual course of business by a person since deceased, whose duty it was to make them, and who had at the time no interest to misrepresent the facts, are admissible in evidence. *Price* v. *Ld. Torrington*, 1 Salk. 285; 1 Smith's Leading Cases, 139, and notes; *Doe* v. *Turford*, 3 B. & Ad. 890; *Poole* v. *Dicas*, 1 Bing. N. C. 649; *Higham* v. *Ridgway*, 10 East, 109; *Doe* v. *Robson*, 15 East, 32; *Brain* v. *Preece*, 11 M. & W. 773, & note; *Welsh* v. *Barrett*, 15 Mass. 380; *Halliday* v. *Martinet*, 20 Johns. 168; *Nichols* v. *Goldsmith*, 7 Wend. 160; *Sheldon* v. *Benham*, 4 Hill's Rep. 129; *Augusta* v. *Windsor*, 19 Maine, 317; *Nicholls* v. *Webb*, 8 Wheat. U. S. Rep. 326; 1 Starkie, 315, 319; 1 Greenl. Evi. sec. 116. See also *Batchelder* v. *Sanborn*, 22 N. H. 325, where many of these cases are cited and commented upon, and it is said by *Eastman*, *J.*, that the court is not disposed to question the correctness of the doctrine announced by them. See also *Pembroke* v. *Allenstown*, 41 N. H. 365.

One question, then, is whether the entries were made in the usual course of business; and that would involve the enquiry whether the bank was intended in the note as the holder or collector; for if the bank had no interest in the note, or duty in respect to it as collector, but it was merely the private business of the cashier, it is quite obvious that said entries upon the books of the bank would not be in the usual course of business, but such entries would stand upon the same ground as if made in the private books of the cashier, and, of course, not admissible. It appears, however, that, at the death of Mr. Wheeler, the note was found among the papers of the bank, and as the case finds, was claimed as its property; and this in connection with the entries adduced by the defendant was evidence from which the court might have found, in the first instance, that the bank had such an interest in it that the entries might be regarded as made in the usual course of business. It is true, there are facts reported that tend strongly to rebut this inference, and it might have been proper, if desired by the defendant, to have submitted the question to the jury, as was formerly done in respect to the interest of a witness, with instructions that if they found the bank had no interest as holder, collector or otherwise, then to lay these entries out of the case. But, as no exceptions are taken upon this ground, it is to be understood that the case was submitted to the jury with proper instructions.

Another question is whether, at the time of making these entries, Mr. Wheeler had any interest to misrepresent the facts, and this must depend upon the question whether he still was interested in the payment of the note either as owner, endorser, or in any way, liable over to the bank. Upon a careful consideration of the evidence reported we are led to the conclusion that the jury might have found that Mr. Wheeler had no interest; although it cannot be disguised that there is evidence tending strongly to rebut such an inference. We cannot, however, say that there was *no* evidence that the whole interest was in the bank; and con-

sequently the court might permit the entries in question to go to the jury with proper instructions, which, as in the other case, in the absence of exceptions, must be presumed to have been given.   Assuming, then, that the judge who tried the cause found that the entries were made in the usual course of business, and by a person whose duty it was to make them, and who had no interest to misstate what had occurred, we think that the entries were rightly admitted ; and this conclusion makes it unnecessary to consider whether the entries were admissible as part of those offered by the defendant.

There must therefore be

*Judgment on the verdict.*