LASSONE *v.* BOSTON & LOWELL RAILROAD.

66 345
68 255
66 345
69 474

An entry on a book of accounts, made in the usual course of business by a person since deceased, is admissible in a suit between third parties, there being evidence *aliunde* that he had means of knowledge, although the entry may have been in his favor.

In an action for injuries to the plaintiff's person from the negligent management of the defendants' locomotive on a highway crossing, an entry by a wheelwright (since deceased) against a third person on his book of accounts of "sixteen spokes, twenty cents apiece, $3.20," made by him in the usual course of his business, is admissible to show the character and extent of the injury to the wheel,—it being a disputed fact whether a wheel of the wagon in which the plaintiff was riding at the time of the accident was damaged by collision with the locomotive, or by the plaintiff's cramping the wagon and throwing himself out,—and there being evidence *aliunde* that the wheel was repaired by the wheelwright.

In such an action, refusal to instruct the jury that upon the question of the defendants' want of care the statutes prohibiting the shifting of cars on a crossing and requiring signals to be sounded upon the approach of a locomotive cannot be considered, is not error, although the declaration does not count on either statute.

CASE, for injuries to the plaintiff from the negligent management of the defendants' locomotive on a highway grade crossing.

June 8, 1887, the plaintiff, with one Benton, while passing over the defendants' crossing in the village of Lancaster in a wagon drawn by a horse, was thrown out and injured. One of the rear wheels of the wagon was broken, and it was a question whether it was done by collision with the defendants' locomotive, or by the plaintiff's cramping the wagon and throwing himself and Benton out after passing over the crossing. On this question the character and extent of the injury to the wheel became material. One Woodward, who repaired the wood-work of the wheel, died before the trial. The plaintiff called his administrator, who testified that he had Woodward's account-book, kept by Woodward in his lifetime, on which he found the following charge to Benton (the owner of the wagon), which the plaintiff elected to have read to the jury subject to the defendants' exception: "June 8, 1887. To sixteen spokes, twenty cents apiece, $3.20." Before calling the administrator, the plaintiff introduced evidence tending to show that several spokes were broken, the tire badly crippled, and the axletree sprung, and that the injury appeared to have been caused by a blow.

The plaintiff gave in evidence *c.* 26, *s.* 1, Laws 1883, and *c.* 98, *s.* 4, Laws 1885. Subject to the defendants' exception, the court

declined to charge the jury that " The declaration not counting on either of the statutes referred to, the jury cannot lawfully consider them upon the question of the defendants' want of care."

Verdict for the plaintiff.

*W. S. Ladd*, for the defendants. 1. The evidence objected to was not admissible, because it was not relevant. There is no evidence whatever to connect it with the case in any way. In order to connect it with the case, the jury were compelled to resort to surmise and conjecture. It must appear from the entry itself that it relates to the fact in question.

2. No authority exists which gives support to the plaintiff's contention. It is believed that no case exists where a single naked, isolated fact, written down by one since deceased, has been given to the jury with permission to construct about and upon it a narrative to suit the individual fancy and inclination of each member of the panel, and then weave the whole into the case, each in his own way. Such is not the law, and such are not the cases. Such entries have been received to fix a date, the performance of a notarial act, or the performance of other acts in the course of regular official or clerical duty,—to identify a thing, and perhaps some other like matters; never, it is believed, as a narrative in itself, or a circumstance about which a narrative is to be woven by the jury out of their imaginations, conjectures, or surmises.

3. The entry admitted here shows on its face that the one making it had pecuniary interest to misstate. It was a charge in his own favor. This fact alone, it is believed, carries it outside of every case of the kind heretofore decided in the common-law world. No case, it is believed, has ever gone further than to admit the entry, when otherwise proper to be admitted, where it appeared that the person making it had no interest, not even the slightest, to misstate. From *Price* v. *Torrington*, 1 Salk. 285, down to the present, the cases are uniform on this point at least. It is a kind of evidence, to say the best of it, not looked upon with much favor by courts and lawyers. All say with one accord that the rule is not to be extended the breadth of a hair.

*O. Ray* and *W. Heywood*, for the plaintiff, cited and commented upon *Wheeler* v. *Walker*, 45 N. H. 355, *Batchelder* v. *Sanborn*, 22 N. H. 325, *Pembroke* v. *Allenstown*, 41 N. H. 365, *Rindge* v. *Walker*, 61 N. H. 58, *Augusta* v. *Windsor*, 19 Me. 317, *Dow* v. *Sawyer*, 29 Me. 117, *Nicholls* v. *Webb*, 8 Wheat. 326, *Welsh* v. *Barrett*, 15 Mass. 380, *Price* v. *Torrington*, 1 Salk. 285, *Pitman* v. *Maddox*, 2 Salk. 690, *Patteshall* v. *Turford*, 3 B. & Ad. 890, *Poole* v. *Dicas*, 1 Bing. N. C. 649, *Higham* v. *Ridgway*, 10 East 109, *Gleadow* v. *Atkin*, 1 Cr. & M. 424, *Reece* v. *Robson*, 15 East 32, *Smith* v. *Cartwright*, 1 C. & P. 218, *M'Mullen* v. *Gilbert*, 2 Whart. 277, *Linn* v. *Naglee*, 4 Whart. 92, *Hartley* v. *Brookes*,

6 Whart. 189, *Townsend* v. *Kerns*, 2 Watts 180, *State* v. *Phair*, 48 Vt. 366, 1 Gr. Ev., *ss.* 116–118, *Union Bank* v. *Knapp*, 3 Pick. 96, *Halliday* v. *Martinet*, 20 Johns. 168, *Holladay* v. *Littlepage*, 2 Munf. 316, *Farmers & Mechanics' Bank* v. *Boraef*, 1 Rawle 152, *Owings* v. *Low*, 5 G. & J. 134, *State Bank* v. *Kain*, 1 Ill. 45, *Nichols* v. *Goldsmith*, 7 Wend. 160.

The entry in Woodward's book was competent, because it tended to show the character and extent of the injury to the wheel. The principle derivable from the American cases seems to be, that entries made in the regular course of a person's business or employment, although he was not a public officer, and although it was not his duty to make them, are admissible in evidence after his death. 1 Sm. Lead. Cas. (H. & W. notes, 6th Am. ed.) 506. The reason why they are not admissible in the lifetime of the person who made them is, that they are secondary evidence.

The question whether a witness had or had not an interest in the entry or charge long ago became obsolete. The smallest interest in the controversy once excluded a witness from testifying. But nowhere in this country does the question of interest at the present day exclude a person from testifying. Hence the line of decisions, beginning with *Higham* v. *Ridgway*, excluding entries in books, except they were against the interest of the party making them, has no bearing upon the question in this case. It is amusing to observe the ingenious methods taken to avoid the supposed rule that book entries must be against the interest of the party making them. Take *Higham* v. *Ridgway*: The charge Hewitt made against Fowden in April was certainly in Hewitt's interest when made. It was just as clearly against Fowden's interest. How absurd it now seems, to hold that the charge became admissible only when marked paid in October, six months afterwards !

There was other evidence in the case as to the injury to the wheel. The blacksmith testified that several spokes were broken, the tire badly crippled, and the axletree sprung. The evidence from Woodward's book was merely cumulative.

The defendants' request for instructions was properly denied. The case of *State* v. *Boston & Maine Railroad*, 58 N. H. 408, is directly in point.

*F. Ladd*, for the defendants, in reply. If the entry in Woodward's account-book was admissible for the purpose of showing that sixteen spokes were broken from the wheel at the time the wagon was taken to him to be repaired, it was admissible by virtue of some exception to the general rule excluding the species of evidence to which it belongs, and it is therefore incumbent on the plaintiff, if he would establish its admissibility, to show clearly what the exception is. That this has not been done will be apparent from an examination and classification of the cases cited by him in his brief.

1. Several of these cases were decided on the substantive ground that the entry of the deceased person was against his interest. These are *Higham* v. *Ridgway,* 10 East 109, the facts and principle of which are too familiar to require statement or comment; *Reece* v. *Robson,* 15 East 32, where a charge for drawing a lease, on the account-book of a deceased attorney, was admitted to prove the time of the execution of the lease, the charge being designated as paid, and being, therefore (see the remarks of Lord *Ellenborough,* C. J., and *Bayley,* J.), against the interest of the person making it; *Gleadow* v. *Atkin,* 1 Cr. & M. 424, where indorsements of interest made by a deceased obligee on a bond were admitted to rebut the presumption of payment, because against interest; and, finally, *Smith* v. *Cartwright,* 1 C. & P. 218, the *ratio decidendi* of which is correctly stated in the head-note as follows: " On an ejectment for a house, the land tax assessment of the parish, in which the collector of taxes charges himself with the receipt of money from A B as tenant of a particular house, is evidence that A B was tenant at that time. The books of an insurance company, in which they charge themselves with the receipt of a sum of money as a premium to insure a particular house in the occupation of A B from fire, are also evidence of his occupation. These entries are evidence, because the party making them charges himself with the receipt of money."

2. Several of the plaintiff's cases were decided on another distinct ground, viz., that the entries were made in the discharge of a duty.    To this category belong the old English *nisi prius* cases before Lord *Holt, Price* v. *Torrington,* 1 Salk. 285, and *Pitman* v. *Maddox,* 2 Salk. 690, and the well known later case of *Patteshall* v. *Turford,* 3 B. & Ad. 890, as also *Poole* v. *Dicas,* 1 Bing. N. C. 649, where an entry of the dishonor of a bill of exchange, made by a clerk at the time of the dishonor in the book of the notary, was held admissible, the clerk being deceased;—and the following American cases: *Welsh* v. *Barrett,* 15 Mass. 380, where an entry on the book of a deceased messenger of a bank, made in pursuance of his official duty (*p.* 385), was received to prove notice to the indorser of a note; *Nichols* v. *Goldsmith,* 7 Wend. 160, where the memorandum of a deceased cashier of a bank was admitted to prove notice to an indorser, the court adopting the principle of *Welsh* v. *Barrett; Union Bank* v. *Knapp,* 3 Pick. 96, where, in an action by a bank against a depositor for having overdrawn entries on the bank-books, made by a clerk since become insane, were held admissible, apparently (*p.* 108) on the same principle; and *Owings* v. *Low,* 5 G. & J. 134, where entries made by a clerk on the books of his employer were admitted, while those made by the employer himself were excluded.

Two of the New Hampshire cases cited — *Wheeler* v. *Walker,* 45 N. H. 355, and *Rindge* v. *Walker,* 61 N. H. 58—also fall under this head.   Reference will be made to these again below.

That the admissibility of this class of entries has not been extended in England beyond those made strictly in the discharge of a duty, is shown by the case of *Massey* v. *Allen*, 13 Ch. D. 558. (*Hall*, V. C., *p.* 79,—" The other ground is, that this entry is admissible as having been made in the ordinary course of business;—as to that, in order to be admissible, such entries must be made in the course of business, in the performance of a duty. I cannot say that it is established in the present case that there is a duty which ought to be performed.")

3. If the class of cases be set one side in which entries made by a tradesman in his shop-books, supported by the suppletory oath of the plaintiff, the administrator of the tradesman, are admitted by virtue of local usage to prove the payment of money or the delivery of goods to the defendant, or the performance of labor for him, it will be found that the American decisions are not numerous which hold that entries made by a person in the ordinary course of business, but not in pursuance of any duty resting upon him, are admissible evidence after his death of the facts which they state. That such is the law in some jurisdictions in this country is, however, not denied. What we desire to lay stress upon is, that the rule, wherever it exists, is subject to the important and highly reasonable qualification that the entry must be by a person with no interest to misrepresent the fact sought to be proved by it.

The cases cited by the plaintiff which seem referable to this American extension of the doctrine held in *Price* v. *Torrington* are the following : *Nicholls* v. *Webb*, 8 Wheat. 326, where a memorandum, made by a notary, of a demand and notice, was held competent to prove those facts after his death ; *Halliday* v. *Martinet*, 20 Johns. 168, to precisely the same effect ; *Augusta* v. *Windsor*, 19 Me. 318, where an entry in the day-book of a deceased physician was held competent to prove the date of a surgical operation which he was admitted or proved to have performed; *Dow* v. *Sawyer*, 29 Me. 117, where entries made by a deceased clerk in a private memorandum-book were admitted to prove the fact of payments made by him ; and *State* v. *Phair*, 48 Vt. 366, where, in order to show that a watch pledged by A belonged to B, it was proved that B had a watch, that it had been repaired by a jeweler since deceased, that the jeweler made a charge for the repairing and set down the number of the watch as a part of the charge, and that this number was the same as that of the watch pledged by A.

In the first two of these cases there was clearly no interest to misrepresent in any way. In *Augusta* v. *Windsor* there was no interest to misrepresent the date of the services ; and in *State* v. *Phair* there was no interest to misrepresent the number of the watch, the date of the services and the number of the watch being in those two cases the facts respectively sought to be established by the evidence. In the latter case, the court say (*p.* 378),—" The

only use that could be made of the entries was identifying the watch described by them." So, in *Dow* v. *Sawyer*, the court say that the case comes within the principle stated by Greenleaf, that "contemporaneous entries made by third persons in their own books in the ordinary course of business, the matter being within the knowledge of the party making the entry, and there being no apparent motive to pervert the fact, are received as original evidence."

4. Certain of the plaintiff's cases are to be referred to the local usages alluded to above, of admitting shop-books on issue of debt and credit. These are *Church* v. *Davis*, 9 Watts 304, *Linn* v. *Naglee*, 4 Whart. 92, *Hartley* v. *Brookes*, 6 Whart. 189, and, apparently, *M'Mullen* v. *Gilbert*, 2 Whart. 277.

The remaining cases cited by the plaintiff appear to be foreign to the matter in hand. In *Farmers & Mechanics' Bank* v. *Boraef*, 1 Rawle 152, it was held that "an entry made by a clerk, in the book of a bank, of a deposit made by a customer, immediately before an entry made by him of the same deposit in the customer's bank-book, and supported by the oath of the clerk, is evidence to go to the jury, together with the customer's book and the evidence of the clerk." In *Townsend* v. *Kerns*, 2 Watts 180, the entries were held to be inadmissible, the court saying (*p.* 181),—" The cases cited, in which entries have been received as evidence, do not apply. They are cases where the entries were made by a person deceased, having no interest in the matter in question, or against his interest, and in the usual course of business, and were received as evidence against the alleged principal, or in suits between third persons, to establish the facts stated in the entry." In *State Bank* v. *Kain*, 1 Ill. 45, it was simply held that the receipt of a cashier was evidence to prove a deposit, and the case has, of course, no application. *Holladay* v. *Littlepage*, 2 Munf. 316, is in fact concerned with an entirely different question. The point decided in *Batchelder* v. *Sanborn*, 22 N. H. 325, is thus stated in the head-note: " The account-books of a party, whether verified by oath or not, are inadmissible to prove any matter collateral to the issue of debt and credit between the parties."

A word as to New Hampshire authority. The only two cases, so far as we have been able to find, which have any bearing upon the present question, are those cited by the plaintiff— *Wheeler* v. *Walker*, 45 N. H. 355, and *Rindge* v. *Walker*, 61 N. H. 58. Without stating the facts of *Wheeler* v. *Walker*, where the controversy was as to the admission of certain entries of a deceased bank cashier, it will be sufficient, in order to show what the case decides, to give one or two extracts from the well considered opinion of *Bellows*, J. [Counsel here quoted from the opinion on *pp.* 358, 359.] It thus appears that Judge *Bellows* thought that an entry made by a deceased person must, in order that it should

be competent evidence, possess at least two requisites, viz., it must have been made in pursuance of a duty, and it must have been made by a person who had no motive to misrepresent the fact to be established by it—which is precisely the English doctrine.

*Rindge* v. *Walker* decides that "entries by a town officer, since deceased, made apparently in the usual course of business and in pursuance of his official duty, are admissible in evidence." In this case, too, the treasurer had no interest to misrepresent, the entries being of money paid to him, and for which he was bound to account to the town. Here we have the English doctrine again.

It would seem, from these two cases and from the absence of any authority to the contrary, that the extension of the English doctrine, adopted in several jurisdictions in this country, by which entries made in the usual course of business, although not in the discharge of a duty, are held to be competent evidence of such facts stated in them as it was not for the interest of the party who made them to misrepresent, has not been recognized and is not law in New Hampshire.

It is not necessary, and indeed it would be scarcely possible, for us to formulate with exactness the principles which are to be deduced from the American authorities on the subject of the admissibility of entries of deceased persons, in the various classes of cases in which the competency of such evidence has been discussed. It is sufficient if we indicate the line short of which all the decisions have stopped, and show that the admission of the entry here would be to cross that line. And we submit that an examination of the plaintiff's authorities fails to disclose a single case in which such an entry has been admitted for the purpose of establishing a fact which it was for the direct pecuniary interest of the party making the entry to misrepresent. That is the line. In the present case, Woodward had such a direct pecuniary interest to misstate the number of spokes repaired,—the same interest which the plumber or painter or any workman has to misstate the number of hours or days of service rendered. The distinction between this case and those cited by the plaintiff, and, as we believe, the entire body of cases both English and American bearing upon the general subject, is, therefore, fundamental.

And the objection to this kind of evidence is not a merely technical objection resting upon an arbitrary rule of positive law; it is one that lies deep in the very constitution of human nature, and is strengthened by the daily teachings of every one's experience. The infirmity is one which, under any circumstances, affects, to some extent, at least, the credibility of evidence; and where, as in the case of entries made by deceased persons, the security for its trustworthiness, afforded by an opportunity to examine and cross-examine, is wanting, the law has wisely said that the objection shall go to its competency also.

SMITH, J. The book of account of Woodward, supported by the suppletory oath of his administrator, would be competent evidence against Benton in a suit by the administrator against him to recover for the repairs of the wheel. *Dodge* v. *Morse*, 3 N. H. 232. Is the book evidence against third parties?

Account-books of a party are not evidence when the dealing between the debtor and creditor is, as to the parties to the suit, a mere collateral matter. *Woodes* v. *Dennett*, 12 N. H. 510; *Little* v. *Wyatt*, 14 N. H. 23; *Batchelder* v. *Sanborn*, 22 N. H. 325; *Leighton* v. *Sargent*, 31 N. H. 119; *Woods* v. *Allen*, 18 N. H. 28; *Harris* v. *Burley*, 10 N. H. 171; *Putnam* v. *Goodall*, 31 N. H. 419; *Brown* v. *George*, 17 N. H. 128. These decisions were prior to the act of 1857 (Laws 1857, c. 1952; G. L., c. 228, s. 13), enabling parties to testify as witnesses in chief. But account-books are still admissible, notwithstanding the party may testify as a witness in chief. *Swain* v. *Cheney*, 41 N. H. 232; *Bailey* v. *Harvey*, 60 N. H. 152; *Sheehan* v. *Hennessey*, 65 N. H. 101.

Written entries by persons deceased may, under some circumstances, be shown in evidence against third persons. There is a class of cases which hold that where a person has peculiar means of knowing a fact and makes a written entry of the fact against his interest at the time, it is evidence of the fact as against third persons after his death, if he could have been examined to it in his lifetime. *Higham* v. *Ridgway*, 10 East 109, is a leading case of this character. The midwife's book of account was received for the purpose of showing the date of the birth of a person, which became important upon the question whether he was twenty-one years of age when he suffered a recovery to bar an estate tail. The entry made in the day-book under date of April 22, 1768, and marked paid in the ledger October 25, 1768, was held admissible upon the ground that the party had peculiar means of knowing the fact, and that the entry was against his interest at the time it was made. "Here it appears distinctly from other evidence," said Lord *Ellenborough*, "that there was the work done for which the charge was made, . . . and the discharge in the book, in his own handwriting, repels the claim which he would otherwise have had against the father from the rest of the evidence, as it now appears. Therefore, the entry made by the party was to his own immediate prejudice, when he had not only no interest to make it if it were not true, but he had an interest the other way not to discharge a claim which it appears from other evidence that he had."

*Warren* v. *Greenville*, 2 Str. 1129, is a similar case. To fortify the presumption that a surrender of a portion of the estate in question should be presumed from lapse of time, the debt-book of a deceased attorney was produced, in which he made charges for suffering the recovery, and other charges for drawing and engrossing the surrender. The charges appeared by the book to have been paid. This was held to be good evidence

after the death of the attorney, who, if living, might have been examined to the fact. See, also, *Spiers* v. *Morris*, 9 Bing. 687, *Marks* v. *Lahee*, 3 Bing. N. C. 408, *Whitnash* v. *George*, 8 B. & C. 556, *Goss* v. *Watlington*, 3 B. & Bing. 132, and *Stead* v. *Heaton*, 4 T. R. 669. In *Middleton* v. *Melton*, 10 B. & C. 317, the entry made by a deceased collector of taxes in a private book kept by him for his own convenience, in which he charged himself with the receipt of sums of money, was held to be evidence of the fact of the receipt of the money in an action against a surety on his official bond, although the parties by whom the money had been paid were alive and might have been called as witnesses. The decision went upon the ground that the entry was to the prejudice of the party who made it. To the same effect is *Smith* v. *Cartwright*, 1 C. & P. 218, where the books of a collector of taxes charging himself with the receipt of money, also the books of an insurance company charging itself with receiving money, were admitted as tending to show an occupancy of certain premises by a party, in an action between third parties.

There is another class of cases in which entries have been received in evidence against third persons, if the entries were made by a person having knowledge of the fact entered, contemporaneously therewith, and in a course of business. *Price* v. *Torrington*, 1 Salk. 285, is a leading case of this character. The book kept by a clerk, in which was set down at night an account of the beer delivered out by the draymen during the day, and to which they set their names, according to the usual way of the plaintiff's dealing, was held good evidence of a delivery to the defendant, the drayman who delivered the beer sued for being dead. The cases are numerous where evidence of this kind has been received, upon the ground that the persons who made the entries " had no interest to misstate what occurred."

In *Patteshall* v. *Turford*, 3 B. & Ad. 890, a memorandum of the fact and time of service, endorsed by one P on a duplicate notice to quit, was, after the death of P, held admissible as " being a minute in writing, made at the time when the fact it records took place by a person since deceased, in the ordinary course of his business, corroborated by other circumstances which render it probable that the fact occurred." In *Nicholls* v. *Webb*, 8 Wheat. 326, the record-book of a deceased notary was held admissible. The entry in the margin was, " Endorser duly notified 19th [17th] July, 1819, the last day of grace being Sunday, the 18th." It was objected that the evidence was in the nature of hearsay. "But the answer is," said Judge *Story*, " that it is the best evidence the nature of the case admits of. If the party is dead, we cannot have his personal examination on oath; and the question then arises whether there shall be a total failure of justice, or secondary evidence shall be admitted to prove facts where ordinary prudence cannot guard against the effects of human mortality."

In *Nourse* v. *M' Cay*, 2 Rawle 69, to show that a deed was a forgery, the account-book of a deceased magistrate, showing charges for acknowledgments of three other deeds on the same day, and no charge for the acknowledgment of the deed in question, was held admissible. An entry made by a deceased clerk of a notary of the dishonor of a bill of exchange (which was presented by the clerk), made in the usual course of business, at the time of the dishonor, in the book of the notary, was held admissible, in *Poole* v. *Dicas*, 1 Bing. N. C. 649, upon the ground that the clerk had no interest to misstate what occurred. An entry in a deceased attorney's book, made in the usual course of business, produced to show the date of a lease, was held admissible in a suit between third parties, in *Reece* v. *Robson*, 15 East 32, where it was said,— "The ground upon which this evidence has been received is, that there is a total absence of interest in the persons making the entries to pervert the fact, and at the same time a competency in them to know it."

"What a man has actually done and committed to writing when under obligation to do the act, it being in the course of the business he has undertaken, and he being dead, there seems to be no danger in submitting to the consideration of the jury." *Welsh* v. *Barrett*, 15 Mass. 380. In that case, the book of a deceased messenger of a bank, in which, in the course of his duty, he entered memoranda of demands and notices to the promissors and endorsers upon notes left in the bank for collection, was received for the purpose of proving a demand on the maker and notice to the defendant as endorser of a note left in the bank for collection. The entry was held admissible, on the ground that when the best evidence is, without the fault of the party, out of his power, so that it cannot be produced, the next in degree must be resorted to or justice would fail. And see *Halliday* v. *Martinet*, 20 Johns. 168.

Many of these cases are cited and commented upon in *Batchelder* v. *Sanborn*, 22 N. H. 325, and their doctrine was adopted in *Wheeler* v. *Walker*, 45 N. H. 355, where it was held that entries made in the usual course of business, by a person since deceased whose duty it was to make them, and who had at the time no interest to misrepresent the facts, are admissible in evidence against third parties.

The case at bar does not fall within either of these classes. The entry was made in Woodward's usual course of business, but was not against his interest; nor can it be said that he had no interest to misrepresent. Was the evidence for these reasons inadmissible? We think it was admissible, both on principle and authority.

In *State* v. *Phair*, 48 Vt. 366, the defendant was indicted for the murder of Mrs. Freeze. After her murder he pawned a watch. To identify the watch as hers, a book kept by Parmenter, a deceased jeweler, in which was recorded a description of the watches repaired by him, was received in evidence. The entries

as to the watch in question were as follows: "Dec. 11, 1871. Mrs. Freeze, gold anchor, Freres [maker], No. 56376—cleaning screw, repairing jewel, $1.50." "Jan. 17, 1873. Mrs. Freeze, gold anchor, Freres, No. 56376—cleaning and jewels, $2.00." The evidence was held admissible, upon the ground, said the judge who delivered the opinion of the court, that they were made by Parmenter "in the regular course of his business, and it was his business to make them. The only use that could be made of the entries as evidence was to identify the watch described by them. Ever since the Earl of Torrington's case . . . . it has been customary to admit such evidence. The principle seems to be founded in good sense and public convenience." It does not appear from the report of the case that the entries were marked paid, or that the question of the admissibility of the book turned on any such point.

*Augusta* v. *Windsor*, 19 Me. 317, was an action to recover for the support of a pauper. It became important to show at what time one Linscott had his leg broken, and, for the purpose of fixing the date, the day-book of the physician who attended Linscott was received in evidence. The book contained a charge, under a certain date, against him for reducing a fracture in his leg. The entry was in the handwriting of the physician, who subsequently died. It does not appear from the report of the case that the book showed payment of the charge. The following extracts from the opinion of Mr. Justice *Shepley* are appropriate on the present occasion: "In what cases entries made by persons deceased on their books and papers in the course of their business should be admitted as testimony, and on what precise principles, has occasioned no little discussion. It will be difficult to reconcile all the decided cases . . . . The case now under consideration would come within the rule as stated by Justice *Taunton* [*Patteshall* v. *Turford*], and be included in the second class of cases named by Justice *Parke* [where the entry is one in a chain or combination of facts, and the proof of one raises a presumption that another has taken place]; for the breaking of the limb and the services of Dr. Neal had been proved, and it would be reasonable to expect that the time of performing them would appear from his books.

"Whether the entry, to be admissible, should appear to be against the interest of the deceased person who made it, is discussed by Mr. Starkie in his treatise upon evidence, and his reasons for concluding that this circumstance does not afford a sufficient test for the admission of such entries, and the rejection of all others, is very satisfactory. . . . .

"It has been considered in several of the states that neither the best administration of justice, nor any well established rule, required the adoption of the limitation that the entry must appear to have been made against the interest of the person making it; and the decisions in this country are more in accordance with those

óf *Warren* v. *Greenville* and *Patteshall* v. *Turford* than with the most of the English cases. This court is not satisfied with the reasoning upon which that limitation was introduced, and does not feel obliged to adopt it." See, also, 1 Stark. Ev. 299–301 (3d Am. ed.), 1 Phil. Ev. 347, and C. & H. and Edwards' Notes.

In *Higham* v. *Ridgway* the entry showed the creation of the very charge of which it showed the subsequent liquidation. It was an entry against Hewitt's (the midwife's) interest so far as it showed payment, and for his interest so far as it showed services rendered, for which he was entitled to be paid. Judge *Story,* in commenting on this case in *Nicholls* v. *Webb,* 8 Wheat. 326, 335, remarks as follows: " It is true that Lord *Alenborough,* in giving his own opinion, laid stress upon the circumstance that the entry admitting payment was to the prejudice of the party, and, therefore, like the case of a receiver. But this seems very artificial reasoning, and could not apply to the original entry in the day-book, which was made before payment; and even in the ledger the payment was alleged to have been made six months after the service. So that in truth, at the time of the entry, it was not against the party's interest. And Mr. Justice *Le Blanc,* in the same case, after observing that he did not mean to give any opinion as to the mere declarations or entries of a midwife who is dead, respecting the time of a person's birth, being made in a matter peculiarly within the knowledge of such a person, as it was not necessary then to determine that question, significantly said, ' I would not be bound, at present, to say that they are not evidence.' "

The book in the Earl of Torrington's case was admitted, upon the ground that the deceased drayman had no interest to misrepresent. This was not strictly correct. His declaration of having delivered the goods was an admission that he had received them for that purpose, and would have been evidence against him in an action for not delivering them according to his instructions. 1 Phil. Ev. 210 (3d Am. ed.).

In *Leland* v. *Cameron,* 31 N. Y. 115, the entry by an attorney in his register, in the proceedings in the action, of the issuing of an execution which could not be found, was held, the attorney being dead, to be competent evidence of the fact that the execution was issued. In *Livingston* v. *Arnoux,* 56 N. Y. 507, the giving of a receipt by a sheriff acknowledging payment on redemption of property sold on execution, was held within the scope of his authority and duty, and the receipt, after the death of the parties concerned in the transaction, competent *prima facie* evidence of the fact and of the time of payment. " Entries made by third persons in the usual course of professional employment contemporaneously with the transaction recorded, are admissible to prove the fact stated, after the death of the person by whom the entry was made. (*Patteshall* v. *Turford,* 3 B. & Ad. 890; *Brewster* v. *Doane,* 2 Hill 537.) The entry by an attorney in his register of

the making of an order or decree in a proceeding conducted by him, is admissible within this rule. The order or decree is the act of the court, but it is procured upon the application of the attorney, and the fact of obtaining it is a part of the history of the proceeding, which properly and usually is inserted in the register. There is no absolute duty resting upon an attorney to make such an entry, but this is not essential: it is sufficient if the entry was the natural concomitant of the transaction to which it relates, and usually accompanies it. (1 Gr. Ev., *s.* 115; *Leland* v. *Cameron*, 31 N. Y. 115.) The facts and circumstances, proved independently of the entry, rendered it probable that an order of confirmation was made, and in connection therewith the original entry of the corporation counsel was, after his death, admissible secondary evidence of the fact." *Fisher* v. *New York*, 67 N. Y. 73, 77.

The rule which governs the admissibility of entries made by private parties in the ordinary course of their business, with some exceptions, "requires, for the admissibility of the entries, not merely that they shall be contemporaneous with the facts to which they relate, but shall be made by parties having personal knowledge of the facts, and be corroborated by their testimony, if living and accessible, or by proof of their handwriting, if dead, or insane, or beyond the reach of the process or commission of the court. The testimony of living witnesses personally cognizant of the facts of which they speak, given under the sanction of an oath in open court, where they may be subjected to cross examination, affords the greatest security for truth. Their declarations, verbal or written, must, however, sometimes be admitted when they themselves cannot be called, in order to prevent a failure of justice. The admissibility of the declarations is in such cases limited by the necessity upon which it is founded." *Chaffee* v. *United States*, 18 Wall. 516, 541. " Entries made at the time acts took place, by one whose duty it was to keep a record of such acts, or by the tradesman whose habit it was, in the course of his business dealings, to preserve a minute of them himself, ought equally to be received as evidence of those acts. The mere fact that the accounts in the latter case may be to the interest of the party making them should not of itself cause their rejection. In the former case, it is uniformly urged in support of the admissibility of the book of items, that it will be presumed that he who was in duty bound to keep a faithful transcript of events has performed his duty. The presumption, drawn from honesty of purpose, appears to be just as strong in the latter case where the merchant writes up his own books of debts and credits, and at least should not be overthrown by the mere appearance of a balance in his favor." 15 Am. Dec. 192, note and cases cited. The person who made the entry, if he is alive, and a competent witness, and within the jurisdiction, is called to verify his writing. " If dead, or beyond reach, or incom-

petent, his testimony is dispensed with *ex necessitate.*" *Bartholomew* v. *Farwell*, 41 Conn. 107, 109; *New Haven & Northampton Co.* v. *Goodwin*, 42 Conn. 230, 231.

The author of the notes on *Higham* v. *Ridgway*, 2 Sm. Lead. Cas. 271, 286, 287 (3d Am. ed.), says,—"Perhaps the true principle decided in *Higham* v. *Ridgway*, and recognized in these cases, is, that entries in the regular course of the person's private business, and against his interest, are evidence after his death,—the principle of *Patteshall* v. *Turford* being confined to entries made in the course of official duty. But the American cases appear to have melted these two into one, and to have settled the very reasonable and useful rule, that all entries made in the regular course of business, private or public, are admissible though not against interest. And though the circumstance that an entry in the regular course of business is against interest will undoubtedly add to its credibility, yet it cannot be considered as settled in our law that the mere circumstance of an entry or declaration being against a person's interest renders it evidence of the fact between third persons after his death."

There is a distinction between entries made in the usual and regular course of business, and a private memorandum. The latter is mere hearsay, and inadmissible in evidence after the death of the person who made it. Entries made in the regular and usual course of business stand differently. When shop-books are kept and the entries are made contemporaneously with the delivery of goods or the performance of labor by a person whose duty it was to make them, they are admissible, unless the nature of the subject is such as to render better evidence attainable. Mr. Greenleaf says the remark that this evidence is admitted contrary to the rules of the common law is incorrect; that " in general its admission will be found in perfect harmony with those rules, the entry being admitted only when it was evidently contemporaneous with the fact and part of the *res gestae*." 1 Gr. Ev., ss. 117, 118.

Declarations of deceased persons as to the boundaries of their land, though not made upon the land, are admissible on an issue between parties not privy in estate to them, if the declarants had means of knowledge as to the boundaries and no apparent interest to misrepresent. The fact that the declarations were in their favor does not render them inadmissible. " The objection goes to the weight of the evidence merely, inasmuch as under the statutory changes in the law of evidence, by which all persons interested, and all parties, even, have become competent witnesses, there is no longer occasion to exclude the declarations of deceased real estate owners as to their boundaries, upon the assumption of *Shepherd* v. *Thompson*, 4 N. H. 213, 215, and other like cases, that it must be presumed to have been their interest to extend their boundaries." *Lawrence* v. *Tennant*, 64 N. H. 532, 541.

The evidence furnished by Woodward's book was cumulative. It

was shown by other evidence that he repaired the wood-work of the wheel, and afterwards died. Hosmer, the blacksmith, testified that several spokes were broken, the tire badly crippled, and the axle-tree sprung, and from appearances he should say the injury was caused by a blow. The book was received, not to show that Woodward repaired the wheel, but to show the character or extent of the injury to it. If he were alive, his testimony that he put in sixteen new spokes at an expense of $3.20 would have been admissible. Being dead, his book of accounts, like other secondary evidence, is admissible. Whether the entry is competent to prove that Woodward repaired the wheel is not a question in the case. That fact appears by evidence *aliunde*, and the entry bears date on the day the injury took place. Although the entry appears in the form of a charge to Benton of sixteen spokes, there is no evidence whatever, aside from the entry, that tends to show the transaction was merely a sale of spokes, or that they were used in any other wheel. Upon all the evidence shown, and in the absence of any evidence to the contrary, the only conclusion the jury could reach was, that the spokes were used in the repair of the wheel that was broken when the plaintiff was injured. If book entries made by deceased persons in the regular course of business are admissible to show identity (*State* v. *Phair*), dates (*Augusta* v. *Windsor* and *Higham* v. *Ridgway*), the surrender of an estate (*Warren* v. *Greenville*), in an action against a surety that his principal had received money (*Middleton* v. *Melton*), the delivery of goods (*Price* v. *Torrington*), the service of a notice to quit (*Patteshall* v. *Turford*), notice to an endorser (*Nicholls* v. *Webb*), and that a deed was a forgery (*Nourse* v. *M'Cay*), we think the entry on Woodward's book of accounts, made in the usual course of his business, and which it was his duty to make, was admissible, he being dead, to show the character and extent of the injury to the wheel, which tended to show that the wheel was broken by a collision. We cannot see that it makes any difference, as regards the question of the admissibility of the evidence, whether the purpose was to show the date when the injury occurred, or to identify the wheel, or to show the extent of the injury. Our conclusion is, that there was no error in the ruling admitting the book.

The instructions requested were properly denied. *State* v. *Boston & Maine Railroad*, 58 N. H. 408.

*Exceptions overruled.*

BINGHAM, J., did not sit: CARPENTER, J., dissented on the competency of the shop-book: the others concurred in the opinion.