ST. CLAIR *v.* A. H. MEYER MUSIC HOUSE.

1. MASTER AND SERVANT— WORKMEN'S COMPENSATION ACT — PERSONAL INJURIES—INDUSTRIAL ACCIDENT BOARD TRIER OF FACTS.

On certiorari to review an award of the industrial accident board, under the workmen's compensation act, if there is any evidence to support its finding the award must be affirmed, since the board is the trier of the facts.

2. SAME—PREDISPOSED BY DISEASE IMMATERIAL—ACCIDENTAL INJURIES.

That plaintiff was predisposed, because of disease, to the form of attack (cerebral hemorrhage) suffered by him, is immaterial, and has nothing to do with the question whether what befell him is to be regarded as an accident or not.

3. SAME—CEREBRAL HEMORRHAGE—ACCIDENTAL INJURIES.

Where plaintiff suffered a cerebral hemorrhage resulting in partial paralysis while he was engaged in heavy and unusual lifting because of insufficient help in delivering a piano upstairs, in the course of his employment, evidence, *held*, to justify a finding of the industrial accident board that plaintiff's condition was due to an accident within the meaning of the act. STEERE and BROOKE, JJ., dissenting.

Certiorari to Industrial Accident Board; submitted June 15, 1920. (Docket No. 7.)   Decided July 20, 1920.

Clayton St. Clair presented his claim for compensation against the A. H. Meyer Music House for injuries received in defendant's employ.   From an order awarding compensation, defendant and the Travelers Insurance Company, insurer, bring certiorari.   Affirmed.

*Vandeveer & Foster*, for appellants.

*Fred T. Miles*, for appellee.

As to what is an accident and personal injury within the meaning of workmen's compensation acts, see notes in L. R. A. 1916A, 29, 227; L. R. A. 1917D, 103; L. R. A. 1918F, 867.

On conclusiveness of findings of commission as to what is an accident or personal injury under workmen's compensation acts, see note in L. R. A. 1918F, 877.

CLARK, J.   The defendant A. H. Meyer Music House, a corporation, was engaged in the business of selling and delivering pianos and other musical instruments. Applicant, having 35 years' experience in that business, was in its employ and he and one other employee, Frank G. Swift, were directed to deliver a piano to a customer of said defendant.   The piano was to be delivered to the second floor of a building reached by a steep, narrow stairway of about 20 steps.   The truck upon which the piano was carried was backed to the front of the building, the piano being upon a piano skid, which resembles a sled, the runners being polished to slide easily.   To the front end of the skid a rope was attached which looped from the front end of the right runner to the front end of the left runner. The rope was used in lifting.   In going up the stairs applicant was in front of the piano and Mr. Swift behind.   Applicant was assisted by a lady who "was not very strong," and a man who "was very weak," both inexperienced in that work.   A minister and a lady of the neighborhood, likewise inexperienced, attempted to assist Mr. Swift.   With such assistance as they had, applicant lifting in front and Mr. Swift pushing behind, the piano was taken up the stairs step by step.   When the last step was reached the piano was pulled and pushed forward until its center was over the last stair riser, when it was "broken over" to rest flat on the floor.   Applicant testified that the last pull was the hardest, that the piano weighed about 900 pounds, and that just as he was making the last pull he felt something give way in his head.   He immediately became ill.   A physician was called who found a rupture of a blood vessel, an artery, of the brain—cerebral hemorrhage—causing and resulting in paralysis of the left side.   The physician testified that the rupture of the blood vessel was due to high blood

pressure caused by the unusual exertion, the lift, sudden straining, and that applicant's arteries were weakened by disease, arterio sclerosis. There was an award in favor of applicant, and it is here the sole contention of defendants, plaintiffs in certiorari, that there was no evidence of accidental injury arising out of and in the course of applicant's employment.

The fact that applicant was predisposed because of disease to this form of attack is immaterial and has nothing to do with the question whether what befell him is to be regarded as an accident or not. See *La Veck* v. *Parke, Davis & Co.*, 190 Mich., at page 607.

Justice STONE, speaking for the court in *Guthrie* v. *Shipbuilding Co.*, 200 Mich., at page 360, said:

"That an injury received by a workman while engaged in his usual work, without intervention of something unusual or fortuitous, is not an accident, is now so well established by our decisions, that the proposition needs no discussion."

See, also, *Schroetke* v. *Jackson-Church Co.*, 193 Mich., at page 622 (L. R. A. 1917D, 64):

Bringing this case within the rule as above stated the board found unusual and fortuitous circumstances:

"This applicant was lifting at a disadvantage. He was doing unusual work; in fact, two men were practically attempting to do the work which ordinarily required the efforts of four or five. They were working under unusual apprehension on account of the lack of help and the inexperience of the women and men who were endeavoring to assist them. The injury occurred at a point where it was necessary to put forth the greatest effort and at a time when apprehension of danger was evidently the greatest. * * * The applicant was called upon at this particular point to put forth unusual effort under unusual and fortuitous circumstances and the unusual happened."

The board is the trier of the facts. If there is evidence supporting the finding of unusual and fortuitous

circumstances above quoted the award must be affirmed.

Mr. Swift testified:

"*Q.* When you ordinarily deliver a piano upstairs, whether or not it is customary to take more than two experienced men to deliver the piano?

"*A.* Why, we usually do, yes.

"*Q.* How many do you usually have?

"*A.* We generally have four good strong men.

"*Q.* Experienced?

"*A.* Four or five, yes, that know what to do.

"*Q.* And so far as you know Mr. St. Clair didn't know either that the piano was to be delivered upstairs?

"*A.* Well, I don't know that he did; we might have talked it over when we got near there. I think he mentioned something about, when we got there, near there, he thought it would have to go upstairs.

"*Q.* What did you do when you got there?

"*A.* Well, when we first got there we run the truck in as near as we could to the place; I think I backed up to the stoop, and we went to see the lady, Mrs. Blok, told her we had her piano for her and wanted to deliver it, and then we commenced to investigate to see about getting some help, it was quite a job, so she said she knew of some people that would help us, there was a lady there named Mrs. Strick, she got her husband over there, then she says, 'I will go and call the dominie' of the Reformed church I think, and so we got him too. Finally we got started upstairs.

"*Q.* At the time you got started did you have sufficient help?

"*A.* Why, no, I don't believe we did have sufficient help as we should have to get the piano up.

"*Q.* Why not?

"*A.* Well, Mr. Strick, the gentleman who helped in front with Mrs. Blok, he is a very weak man, he wasn't strong, and I didn't know that so much then as I did after we got up there.

"*Q.* Then you started to move the piano upstairs?

"*A.* Yes. When we started the first step we have to lift that on and when you get that some ways up you shove it up until about an inch or so of the step,

then they give it another raise and when you raise it you give it another push until you get it so it is on the incline of the stairway, get it level with the stairway.

"*Q.* Ordinarily you have more than one man working at the front end of the piano?

"*A.* Oh, yes, usually three.

"*Q.* And usually three?

"*A.* Three men.

"*Q.* And at that time you had practically Mr. St. Clair doing the work?

"*A.* Mr. St. Clair had to do the heft of the business, because there was one lady that wasn't very strong. Mrs. Blok did what she could do but couldn't do much and Mr. Strick wasn't a strong man.

"*Q.* And Mr. St. Clair took and handled both ropes?

"*A.* Yes, sir, and they were doing as much as they could.

"*Q.* And they would have to stand back of Mr. St. Clair, wouldn't they?

"*A.* Yes.

"*Q.* Because there wasn't any room there?

"*A.* You see when you would lift, it was narrow; the stairway wasn't wide enough to get to the sides, and you couldn't get in there, you had to stand in front of the piano and then you got hold of the ropes and lifted.

"*Q.* All right, let us get to the top of the steps.

"*A.* When we got to the top step we pushed you see, then we pushed it, then we would have to be careful to get within an inch of the other so when we raised it again it wouldn't catch under the stairway.

"*Q.* Well, practically, Mr. St. Clair was doing all that alone because the other people were standing back of him because there wasn't room enough?

"*A.* They were doing what they could but couldn't get in, but they did what they could.

"*Q.* Whether or not this condition was usual or whether all this time Mr. St. Clair had to exert himself more than he ordinarily did?

"*A.* I think he had the hardest job than he had for a long time while he worked with me, that is my candid opinion; it was the hottest time of the day.

"*Q.* Tell just what happened when you got to the top step.

211—Mich.—19.

"*A.* Well, when we got to the top step we shoved the piano into the room.

"*Q.* Before you shoved the piano into the room.

"*A.* Oh, you mean over the break? When you get to the last break where you go over you got to get all the strength you got and hang to it to raise it over; it is a heavy thing to do, and anyone who ever handled them knows that, and it is the same in front, you have to lift in front to get it over after you get it started and get on to the end of the skid, then they help below, then they shove a little further and then all get up, that is the way we went, I know that. Hard job.

"*Q.* Now, on this particular occasion was it a harder job than usual?

"*A.* Well, yes.

"*Q.* To get it over the top and make the break?

"*A.* Well, I tell you it was a good big job, because we didn't have the help we should have."

Applicant testified:

"*Q.* Well, was there anything out of the ordinary, unusual, about that particular lift, anything different from any of the others?

"*A.* Well, I will tell you; no, nothing only in one way there is, another way there isn't; you never draw one up a stairway but every minute you are uneasy about it until you get it to the landing, you are uneasy, afraid it is going to get away from you. * * *

"*Q.* Why was the last lift any different than the others then?

"*A.* Well, it is always a hard lift when you go up a stairway, the last step is hard one; you see when you make the last raise, then you are lifting, in a way you are lifting really the whole weight of the piano, simply because here in the piano, the back end is on the stairway, you have got to lift harder, really the whole thing, to make the last raise.

"*Q.* Well, was it any harder lift than the others?

"*A.* I think it is, I think it always is."

Making what happened to applicant an accident within the meaning of the act, the testimony quoted affords a basis for a finding of unusual and fortuitous circumstances, viz.: That applicant and Mr. Swift,

with some inexperienced help, were doing work usually done by four or five experienced men; that applicant at the front of the piano was doing nearly, if not quite, work usually done by three experienced men; that applicant's usual anxiety or apprehension that piano might fall was aggravated and made unusual by the lack of sufficient experienced help may be inferred; and that in making the last, hard lift, breaking the piano over the top of the stairs, there was unusual lifting and straining, exertion and apprehension, resulting in the unusual—cerebral hemorrhage. This view is supported by authority. *Grove* v. *Michigan Paper Co.*, 184 Mich. 449; *La Veck* v. *Parke, Davis & Co.*, *supra;* *Schroetke* v. *Jackson-Church Co.*, *supra;* *Robbins* v. *Engine Co.*, 191 Mich. 122; *Schanning* v. *Castings Co.*, 203 Mich. 612; *Crosby* v. *Thorp, Hawley & Co.*, 206 Mich. 250.

The award is affirmed.

FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred with CLARK, J.

BROOKE, J. I can find in the record no evidence of an *accidental* injury to claimant.

STEERE, J., concurred with BROOKE, J.

MOORE, C. J., did not sit.