BUNKER v. MOTOR WHEEL CORPORATION.

1. EVIDENCE—HEARSAY EVIDENCE NOT ADMISSIBLE.

In proceedings under the workmen's compensation act for an accidental injury in the course of employment, resulting in the death of the employee, testimony of statements of the deceased made to his landlady, after returning home, hours after the claimed accident, and to a physician, days afterward, are hearsay and inadmissible.[1]

2. SAME—RES GESTÆ.

In such proceedings, testimony of a fellow employee of statements made by the injured employee after the claimed accident and that the employee took off his shoe to examine the injured toe, is held, part of the res gestæ and

[1] Workmen's Compensation Acts, C. J. § 113 (Anno).
As to how near the main transaction must declarations be made in order to constitute part of the res gestæ, see note in 19 L. R. A. 749.
As to statements made explaining accident as res gestæ, see note in 42 L. R. A. (N. S.) 917.

admissible in evidence notwithstanding such witness did not see the accident and could not tell how long afterwards the statements were made.[2]

3. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—COURSE OF EMPLOYMENT.

> On certiorari to review an award under the workmen's compensation act for the accidental death of an employee, evidence examined, and *held*, to sustain the finding of the department of labor and industry that deceased received an accidental personal injury arising out of and in the course of his employment.[3]

4. SAME—PREDISPOSITION BECAUSE OF DISEASE HAS NO BEARING.

> That an employee may have been predisposed, because of disease, to gangrene and blood poisoning, which ensued as a result of an injury, has no bearing on the question of whether what befell him should be regarded as an accident within the meaning of the workmen's compensation law.[4]

5. SAME—FINDING HAVING EVIDENTIAL SUPPORT CONCLUSIVE.

> In such proceedings, the finding of the department, having evidential support, is conclusive.[5]

Certiorari to Department of Labor and Industry. Submitted April 7, 1925.   (Docket No. 11.)   Decided June 18, 1925.

Russell Bunker, an infant, by Ella Bunker, guardian, presented his claim for compensation against the Motor Wheel Corporation for the accidental death of his father in defendant's employ.   From an order awarding compensation, defendant and the Independence Indemnity Company, insurer, bring certiorari.   Affirmed.

*Frederick J. Ward,* for appellants.

*Watt & Colwell,* for appellee.

CLARK, J.   On certiorari it is urged that there is

[2] Workmen's Compensation Acts, C. J. § 113 (Anno); [3] Id., C. J. § 114; [4] Id., C. J. § 54; [5] Id., C. J. § 127.

no evidence of an accident arising out of and in the course of the employment and that therefore the award in favor of the dependent of the deceased employee should be vacated.

Defendant employer laid off the employee on December 10, 1923. He returned January 2, 1924, and worked that day, his last in the employment. While there is confusion as to time, it must be held that, in view of the fact that employee worked but one day in January, there is evidence tending to show that prior to January 2d the employee was not lame, that on returning from his work on January 2d, he was lame, a great toe was bruised, discolored, the skin broken. Testimony of statements made by the employee to his landlady, Mrs. Holmes, that night, hours after the claimed accident, and to a physician, Dr. Lee, days afterward, respecting his injury, is inadmissible, being hearsay.

The case turns on whether the testimony of a fellow employee, Linsey, of an occurrence which the evidence tends to show was on the last day of employment, January 2d, is admissible as a part of the *res gestæ*. We quote from the finding of the department:

"'Q. Was he working in the same department you was?

"'A. Yes, sir.

"'Q. Did you see him there at work?

"'A. Yes, sir.

"'Q. Now, witness, did you know of Mr. Bunker having some injury there over at the factory?

"'A. Yes, I seen him go downstairs with a load of wheels, took a load of wheels and unloaded them and brought back some wheels. He said he hurt his toe. * * *

"'A. What he said is all I know. * * *

"'A. He said he dropped a wheel on his toe. * * *

"'Q. What else did he say, Mr. Linsey?

"'A. About what?

"'Q. About his accident?

"'A. He said it hurt him like the devil, as near as I can remember it. He said he guessed he would go over in the corner and take his shoe off and he did that and it was busted

open he said, he guessed, and put on his shoe and went to working.

"'Q. He told you his toes were busted open?

"'A. Yes, sir.

"'Q. Did you see him when he sat down and took off his shoe?

"'A. I seen him go off in the corner. He was about as far from here to that corner, seen him take his shoe off.

"'Q. You didn't see his foot?

"'A. No, sir.'

"On cross-examination Linsey testified that he did not know how long before it was that deceased had dropped the wheel on his toe, and stated:

"'Q. He went downstairs some time during the day?

"'A. It was done some time during the day and I don't know what time it was. Ain't going to try and tell. * * *

"'Q. After he left you, that is, you don't know where he went?

"'A. Only as I know where he had to go. * * *

"'Q. In loading these wheels and taking them down and making the return trip how long does that usually take?

"'A. I don't know, as he says he may go somewhere else. A man can go down there and back and unload a load of wheels in fifteen minutes if nothing bothers. I know we ain't got a load of wheels up in half a day when the elevator didn't run. * * *

"'A. I might have told him that. I don't know, I probably did. I wouldn't say I did or didn't. As I said before he can make a trip in thirteen minutes. I have done it."

"Respondents claim that Mr. Linsey's testimony is inadmissible. Applicant offers this testimony as part of the *res gestæ*. In *Guyer v. Equitable Gas Co.*, 279 Pa. 5 (123 Atl. 590), the supreme court of Pennsylvania said:

" 'It is urged for appellant that there is no competent evidence to support the finding that the deceased sustained an accident in the course of his employment. Mr. Guyer left his home in his usual health on the morning of October 27, 1921, to perform his duty as a meter reader, and in doing so entered the home of a Mrs. Sillman, in Tarentum, looking pale and saying he had just slipped and hurt himself, pointing to his back. On returning home that evening, he stated he had hurt his back and leg by falling or skidding on some cellar stairs, and the

231—Mich.—22.

next day repeated the same to the family doctor. * * *

" 'The statement made to Mrs. Sillman, however, rests upon a different basis; the deceased was then pale and declared he had just sustained an accident.   That declaration was apparently spontaneous and so connected with the accident itself as to be a part of the *res gestœ* and as such competent evidence.   It is not necessary that the declaration be made on the exact place of the occurrence.   22 C. J. p. 458.   Statements by a person, on going downstairs, as to what had just occurred upstairs, or on entering a house as to what had just occurred outside, would be part of the *res gestœ*.   In either case the declaration would be an undesigned incident of the occurrence and not the recital of a past event.'

"The testimony in the instant case is very similar in many respects to the fact stated in the above quoted case.    The testimony of Mrs. Holmes is to the effect that when deceased left her house in the morning he was all right and in his usual health.    Sometime during the day he complained that he had dropped a wheel on his toe and went over in the corner and removed his shoe and stated he had burst his toe open.    He had just come upstairs and the fact that he took off his shoe at that time to examine his foot would indicate that the accident had happened but recently.    When he returned home that night he limped and Mrs. Holmes saw the injured foot and treated it.    Mrs. Holmes testified:

" 'Q. Do you know of him—did he ever complain to you about an injury?

" 'A. I took care of his toe. * * *

" 'A. I took care of the sore toe.   It was his big toe.

" 'Q. When was your attention first called to this sore toe?

" 'A. One evening when he came home he was limping and naturally he complained. * * *

" 'Q. Now what time was it on that day when he came home?

" 'A. Supper time.

" 'Q. About the time he usually arrives from his work?

" 'A. Just about the same time.

" 'Q. What did he do?

" 'A. Took off his shoe.   Bathed his foot in hot water and salt and I bandaged it for him.             .

" 'Q. Go on now and describe the condition his foot was in. * * *

" 'A. I bathed his toe and his toe was black and near the top

of the nail was a little small opening.   I did it up and later a day or so, he seemed to be limping around and took off his shoe and I put an antiphlogistin poultice on it and then he went away.   When he went he had his shoe cut so as to give his toe plenty of room and that was really all I know about it.

" 'Q. Do you know whether he went to work again or not?

" 'A. I couldn't say.

" 'Q. Now did you observe any bruises upon his foot?

" 'A. It was black, his toe not his foot, his toe was black.

" 'Q. Did he tell you how it happened?

" 'Mr. Ward: Just yes or no.

" 'A. Yes, sir.

" 'Q. Now that morning when he went away and went to work he apparently at that time was he suffering from any trouble with his foot?

" 'A. No, sir.'

"Several days later when he visited Dr. Lee at Lowell the doctor found the same condition.. Taking all these facts together we think it has been fairly established by competent testimony to the mind of any reasonable person the only legitimate inference that can be drawn is that deceased did receive an accidental personal injury arising out of and in the course of his employment with respondent employer."   *   *   *

We think Linsey's testimony was admissible as a part of the res gestæ as stated by the department.

See, also, Gilbert v. Railroad Co., 161 Mich. 73; 42 L. R. A. (N. S.) 953, note; 19 L. R. A. 749, note.

That the employee may have been predisposed because of disease to gangrene and blood poisoning, which ensued, has nothing to do with the question of whether what befell him is to be regarded as an accident.   St. Clair v. A. H. Meyer Music House, 211 Mich. 285.

The finding of the department having evidential support is conclusive on this court.

The award is affirmed.

MCDONALD, C. J., and BIRD, SHARPE, MOORE, STEERÉ, FELLOWS, and WIEST, JJ., concurred.