MAMIE DYMAK, APPELLEE, V. HASKINS BROTHERS & COMPANY ET AL., APPELLANTS.

271 N. W. 860

FILED MARCH 9, 1937. No. 29975.

*Brome & Thomas* and *Harold A. Moore,* for appellants.

*Anson H. Bigelow* and *Philip Abboud, contra.*

Heard before Goss, C. J., Rose, Eberly, Day, Paine and Carter, JJ., and Chappell, District Judge.

Eberly, J.

This is a proceeding instituted in this court by Haskins Brothers & Company and Great American Indemnity Company, to review an award of compensation made by the district court for Douglas county against the appellants and in favor of Mamie Dymak on July 13, 1936.

Section 48-174, Comp. St. Supp. 1935, provides that this judgment, so appealed from, may be "modified or set aside only upon the following grounds: (1) That the court acted without or in excess of its powers. (2) That the judgment, order or award was procured by fraud. (3) That the findings of fact are not conclusively supported by the evidence as disclosed by the record, and if so found, the cause shall be considered *de novo* upon the record. (4) That the findings of fact by the court do not support the order or award."

It appears that the original order appealed from was

entered in the Nebraska workmen's compensation court, in the following terms:·

"1. That on or about April 19th, 1935, the plaintiff was in the employ of the defendant Haskins Brothers & Company, a corporation, as a wrapping machine operator in and about the soap factory operated by the said defendant in Omaha, Nebraska, at a weekly wage of $13.00; that on or about said date, while plaintiff was attempting to start the wrapping machine, pulling the clutch not being sufficient to start the machine, plaintiff held to the clutch with one hand and stooped so that she could turn the fly wheel with the other hand, and in so doing severely wrenched her back in and about the sacro-iliac region, tearing and spraining the bones, ligaments and muscles and soft tissues in and about said sacro-iliac region; that said accidental injury arose out of and in the course of plaintiff's said employment.

"2. That by reason of said accident and the resultant injuries, plaintiff was temporarily totally disabled from and after April 19th, 1935, to and including January 13th, 1936, a period of 34 weeks, ·for which period plaintiff is entitled to $8.67 each week; that plaintiff's temporary total disability was immediately followed by permanent partial disability traceable to said accident and said permanent partial disability is found to be 50% of normal, for which plaintiff is entitled to $4.33 each week for a period of 266 weeks from and after January 13th, 1936."

Such award also contained an allowance for medical services and for legal services.

In the district court for Douglas county, the award of the compensation court was sustained.

Under the statutory limitations already referred to, this appeal presents the question of the correctness of this judgment.

The order entered is certainly within the powers of the compensation court. Fraud is not alleged, neither is it contended "that the findings of fact by the court do not support the order or award."

There is no question under the evidence that appellee suffered an injury resulting from an accident arising out of and in the course of her employment. She is therefore entitled to compensation, unless her right thereto is negatived by appellants' contention that "Medical evidence is conclusive that plaintiff had a congenital defect of the sacro-iliac region."

The following is, in substance, an accurate description of the physical condition of plaintiff as it existed prior to the accident: The X-rays disclosed an abnormal relation between the position of the sacrum and the lumbar spine. The position of the sacrum is more horizontal than normal. Normally the sacrum occupies, or is in, a plane at an angle with the plane of the lumbar spine, the angle being about 45 degrees with the angle at the front, with the apex of the angle at the front. In this case the sacrum is almost horizontal, so that the angle is close to 80 or 90 degrees. This is not the result of the accident, but rather is a congenital thing. According to the testimony of the experts, this type of back constitutes one that is weaker than a normal spine; more susceptible to strain than a normal spine.

The appellants cite *Gilkeson v. Northern Gas Engineering Co.*, 127 Neb. 124, 254 N. W. 714. In that case Gilkeson's witnesses' testimony tended to establish that a mitral regurgitation which existed subsequent to the accident, to which he had been subjected, was caused by it, and was due to the stress and strain thrown upon him. But from a consideration of all the evidence, this court concluded that Gilkeson had a mitral regurgitation and disability therefrom prior to and at the time of the exertion the accident imposed upon him, and that it was not increased in extent by the same. The rule invoked by these facts is wholly inapplicable here, where the undisputed evidence is that the plaintiff worked for defendant, Haskins Brothers & Company, more than eleven years, and prior to this accident had never had an accident or drew compensation. There is no evidence that prior to the accident here in suit she ever suffered from a strain or injury in the sacro-iliac region.

The facts in the instant case invoke the application of the well recognized principle, viz.: "Injury from strain or over-exertion due to a physical condition predisposing the employee to injury is an injury within the terms of the various workmen's compensation acts authorizing compensation for injuries, personal injuries, accidental injuries, or personal injuries by accident, even though had the person been sound in every particular the strain would not have been sufficient to cause his death or provoke any serious physical injury." 71 C. J. 607. See, also, *Bunker v. Motor Wheel Corporation,* 231 Mich. 334, 204 N. W. 110; *Hackley-Phelps-Bonnell Co. v. Cooley,* 173 Wis. 128, 179 N. W. 590.

The amount of the award of compensation is challenged as being excessive.

"Under the employers' liability act * * * the inquiry respecting the extent of an injury to an employee should be directed to his condition at the time of the examination or trial," and subject to the right to make application for a modification any time after six months from the date of the award. *Updike Grain Co. v. Swanson,* 103 Neb. 872, 174 N. W. 862.

In *Poast v. Omaha Merchants Express & Transfer Co.,* 107 Neb. 516, 186 N. W. 540, Day, J., in delivering the opinion of this court, employed the following language: "A fair construction of the law would imply that where an employee sustains an injury resulting in temporary total disability, but of such a character that the extent (duration) of the disability cannot then be determined, the employee is entitled to receive compensation under subdivision 1 of section 3662 (now section 48-121, Comp. St. 1929), until such time as a cure is effected, or until it can be determined definitely what percentage of permanent partial loss the employee will suffer."

Again, the courts of a sister state have had for consideration these facts: "An employee's back was wrenched in an accident. It failed to get well in the time an ordinary wrenched back would, and arthritis was found. There was no way of determining just when the disability from the

accident ceased and that from arthritis began. It was held that, so long as disability continues within the legal limit of 300 weeks, compensation should continue. The man had had no trouble up to the time of the accident, so the burden of proof was held to be on the employer to show that the disability caused by the accident stopped." 2 Schneider, Workmen's Compensation Law (2d ed.) 1362, citing *Fitzsimmons v. State Industrial Commission,* 120 Okla. 31, 250 Pac. 111.

The evidence relating to plaintiff's disability at the time of the trial has been read and considered. That it is conflicting may be conceded. To set it out at length would unduly lengthen this opinion and would serve no purpose. The parties are "entitled to a final determination of the character of the disability, the full amount to be recovered, and the times at which this amount shall be paid; in other words, to a complete disposition of the case." *Schlesselman v. Travelers Ins. Co.,* 111 Neb. 65, 195 N. W. 466. See, also, *Wingate v. Evans Model Laundry,* 123 Neb. 844, 244 N. W. 635.

This determination must be made on the evidential facts as they exist at the date of the trial, even though further treatment might reduce the degree of permanent disability, the employer finding his protection, in the event of a subsequent reduction of the degree of the disability, in an action to decrease the amount of payments decreed to be paid. So considered, the evidence in the record sustains the judgment of the trial court.

The recovery for services of a competent physician, employed by appellee to treat the injury resulting from the accident in suit, is challenged. To sustain this contention, reliance is placed on the doctrine announced in *Radil v. Morris & Co.,* 103 Neb. 84, 170 N. W. 363. In the present case, the proof is that the defendant Haskins Brothers & Company wholly failed to notify its employees (including appellee) of the physician employed by it, or the arrangement made for their care in the event of injury.

In discussing the question involved in this case, the au-

thor of Schneider's Workmen's Compensation Law, employs the following language: "The following statement by the court in this case will apply to most of the American compensation acts except as to the time limit therein mentioned: 'The obligation to furnish medical and hospital services for the first two weeks after the injury, is imposed on the insurer by the express words of the act. This duty must be performed or reasonable efforts made to that end before the statutory obligation is satisfied. "Furnish" means to provide or supply. Its significance may vary with the connection in which it is found. It is used here to describe a duty placed upon an insurer respecting a workman who receives "a personal injury arising out of or in the course of his employment." Such a person is manifestly presumed by the act to be under more or less physical disability and hence not in his normal condition of ability to look out for himself. The word "furnish" in this connection imports something more than a passive willingness to respond to a demand. It implies some degree of active effort to bring to the injured person the required humanitarian relief. Reasonably sufficient provision for rendering the required service must of course be made. Then either express notice must be given to the employee or there must be such publication or posting of the information as warrants the fair inference that knowledge has reached the employee.'" 2 Schneider, Workmen's Compensation Law (2d ed.) 1614.

Coupled with this failure on part of appellants, evidence in the record before us tends to support the conclusion that the physician employed by the appellant Haskins Brothers & Company, first appeared at the home of appellee, where she was confined to her bed, on the third day after the accident, and, though afforded ample opportunity, failed to render the necessary services, and, in fact, consented to the continuance of the services of the physician who had been employed by the injured party. Under these circumstances the allowance made by the district court was correct.

Upon due consideration of the cross-appeal, in the light of the facts in the record, and the authorities cited by appellee, we find that she is not entitled to an award of compensation for life under subdivision 1 of section 48-121, Comp. St. 1929. However, it appears that the appellee is entitled to an allowance of attorney fees for services of her attorneys on this appeal, which is fixed at $150.

It follows, therefore, that the findings and award of the district court appealed from are, in all respects, correct, and are

AFFIRMED.