PETER MAUL, APPELLANT, v. IOWA- NEBRASKA LIGHT & POWER COMPANY, APPELLEE.

288 N. W. 532

FILED NOVEMBER 17, 1939. No. 30751.

*Chambers, Holland & Locke,* for appellant.

*Lee & Sheldahl, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

EBERLY, J.

This proceeding is an appeal to this court by Peter Maul, appellant and plaintiff, to reverse a judgment entered in the district court for Lancaster county on December 3, 1938, in favor of the Iowa-Nebraska Light & Power Company, defendant and appellee herein, and against the appellant, denying his petition for workmen's compensation and dismissing his action.

The claims of Peter Maul, as set forth in the pleadings, are: That on November 27, 1937, as he was performing his work for the defendant company, he stumbled and fell, while carrying a bundle of pipe for the defendant company, and he thereby sustained an injury to the first and second lumbar vertebræ of his spine. It is also charged by plaintiff that this accident and the physical results occasioned

thereby accelerated and lit up a general arthritic condition of his spine, which had theretofore not been disabling, to such an extent that thereafter he became totally and permanently incapacitated to perform any work and labor, which prior to said accident he was capable of performing. The defendant light and power company in its pleadings, in effect, denies the happening of the claimed accident and all other claims made by plaintiff. The record discloses that the Nebraska compensation court found that these injuries in suit arose out of and in the course of plaintiff's employment, and awarded him compensation and medical benefits. Thereafter, on appeal, after trial *de novo,* the district court for Lancaster county reversed the award and denied the plaintiff recovery. Now, on this appeal, plaintiff contends that the findings of fact as made by the district court in this case are not conclusively supported by the evidence as disclosed by the record; that plaintiff is entitled to a trial *de novo* therein (Comp. St. Supp. 1937, sec. 48-174) ; and that the district court erred in its denial of his petition.

The evidence discloses, without contradiction, that on November 9, 1938, plaintiff Maul was 58 years of age; that immediately prior to November 27, 1937, he had been employed by the Iowa-Nebraska Light & Power Company as a laborer for 16 or 17 years; that this employment was "steady." Maul's testimony is that during the 16 years he laid off only three times, and then because he had "an awful cold;" that during the last year immediately preceding November 27, 1937, he had not laid off at all on account of ill health; that he was able to do his part of the work, and was "earning the same wage that other men were earning working right with him."

In the early afternoon of November 27, 1937, plaintiff, together with three other employees of the defendant company, under the immediate supervision of defendant's foreman, was engaged in carrying "inch and a quarter" pipe from a box car across a neighboring street and into defendant's "pipe house." These pipes, the record discloses, were tied in bundles of some five or six each, which weighed

approximately 125 pounds a bundle. Each bundle was being carried by two men, the ends of the bundle resting on the shoulders of the carriers. Extending into this pipe shop, at right angles to one of its inclosing walls, is an elevated portion of the floor. This elevation is quadrilateral in shape and kept in place by bordering planks set on edge and secured by stakes. Thus constructed, it forms an obstruction to the passer-by from four to six inches high. It is referred to in the record as a platform. On the afternoon in question, while engaged in carrying a bundle of pipes and passing in the vicinity of this elevation, plaintiff's right foot came in contact therewith causing him to stumble and fall to the ground. This contact, it appears, was near the corner of this platform as it extended into the shop. The jar suffered from the fall was of course increased by the weight then being carried by plaintiff. As to Maul's position at the time of this fall, with reference to the platform, the foreman testifies: "Out far enough so when he grabbed his side with his right hand and kind of brought his foot that way (indicating) he was past the platform like that (indicating) ;" he was away from the corner of the platform "in the neighborhood of two and two and a half" feet. Plaintiff testifies that he did not feel any pain before he stumbled, but immediately afterwards a pain "hit him" in the "right lower part of (his) stomach." He grabbed his lower right side with his hand and manifested great pain. He was unable to stand up when they attempted to raise him to his feet, saying, "That hurts too much." The foreman had the workmen bring over a small tool box to where Maul was lying, and when some coats had been thrown upon it, Maul was picked up and laid over on it on his stomach, and he rested in that position with his knees on the ground and his chest and stomach over the tool box. The boys called an ambulance right away, and when it arrived went to the hospital with Maul. He was taken to St. Elizabeth Hospital of Lincoln, where the company doctor or surgeon took him in immediate charge. We have in the record what is referred to as exhibit 13. It is the complete record of Peter Maul's

case, as far as the hospital is concerned. It comprises 31 pages. It includes the records of attending physicians, by nurses, and from the laboratories. The first entry bears date "11-27-37" and the last "12-31-37." The record further discloses the following at the trial on this case in the district court, viz.: "Mr. Sheldahl (attorney for the Iowa-Nebraska Light & Power Company): We offer exhibit 13 in evidence. Mr. Holland (attorney for Maul): No objection. Exhibit 13 received in evidence and the same is attached to this bill of exceptions on the following page and made a part hereof."

It is to be noted that statements contained in exhibit 13 do not come to us under sanction of the customary oath. Strictly speaking, the recitals and facts therein contained are hearsay. A possible exception exists as to the written report and findings of Czar Johnson, M. D., bearing date of December 6, 1937, who, prior to the commencement of the trial in the district court, had departed this life. Other evidence in the record discloses that Dr. Czar Johnson was called in consultation by the attending physician, Dr. Blum, and that Dr. Czar Johnson participated in an examination of Peter Maul, and in his written report and findings we have the result of Dr. Johnson's professional examination. His conclusions and findings are that the disabilities and injuries, under which Maul was suffering at the date of the examination, were traumatic in their origin, and tend to sustain a recovery in Maul's behalf in the present action.

"Said a learned judge: 'What a man has actually done and committed to writing when under obligation to do the act, it being in the course of the business he has undertaken, and he being dead, there seems to be no danger in submitting to the consideration of the jury.'" 1 Jones, Evidence, Civil Cases (4th ed.) sec. 319. See cases in note 14, page 594 of foregoing citation; also *Lassone v. Boston & Lowell R.*, 66 N. H. 345, 24 Atl. 902.

Without a determination of the matter above presented, we shall consider all statements of exhibit 13 as hearsay, presented to the court by the Iowa-Nebraska Light &

Power Company, and, without objection of the opposing attorney, admitted in evidence by the trial court. On this subject, we are committed to the rule, viz.: "Hearsay evidence tending to prove a material fact, if admitted without objections, may sustain a finding of the existence of that fact. The probative force of such evidence is for the jury and not for the court to determine." *Metz v. Chicago, B. & Q. R. Co.*, 88 Neb. 459, 129 N. W. 994. See, also, *Sheibley v. Nelson*, 84 Neb. 393, 121 N. W. 458. It follows that each statement contained in exhibit 13 is for the proper consideration of this court in this trial *de novo*, to be given such weight as its intrinsic nature, taken in consideration with the other evidence in the case and circumstances in connection therewith, may justify. But, the rule appears to be, "Hearsay testimony admitted without objection may sustain a finding based solely thereon. *Sheibley v. Nelson*, 84 Neb. 393." *Metz v. Chicago, B. & Q. R. Co.*, 88 Neb. 459, 129 N. W. 994.

That Maul actually suffered an injury on November 27, 1937, seems to be established by his physical condition, which appears somewhat baffling to the company doctor and the consultant which the company doctor called to his assistance. The following is included in the cross-examination of the company doctor on the subject of his professional treatment of the plaintiff, viz.:

"Q. In fact, if the thing had been done that you wanted to do at one time in this case, his stomach would have been opened and his abdomen cavity explored for what you might have been able to find? A. That is right. Q. You believe now your diagnosis on that was wrong? A. I do. * * * Q. And at that time you wrote down in your hospital notes you couldn't be sure of diagnosis on it? A. Well, I couldn't be sure. I am not familiar with what I reported. Q. That is true anyway? A. Yes. Q. On November 28th, the following day, you thought it might be his heart? A. That is right. Q. On November 30th you thought it might be pleurisy? A. That is right. Q. And on December 1st, you thought that the signs suggested an appendicitis and you

advised a laparotomy? A. That is right. Q. Also on that date, as I note from the hospital records, you said and wrote in there, 'I favor acute gall-bladder.' That is there, isn't that? A. That was the thing I thought he probably had. Q. In other words, there was no question in your mind as to whether or not Mr. Maul was a malingerer or faker at the time he was in the hospital? A. Oh, he was having pain. Q. His complaints were real then, weren't they? A. That was obvious. * * * Q. Doctor, a while ago you said that you believed this man had become a malingerer because of the fantastic diagnosis of his doctor,—you made that statement? A. Right. * * * Q. Now according to what you said, I take it you don't think there is anything wrong with Mr. Maul's back now? A. I don't think anything wrong except chronic arthritis. Q. He said he can't tie his shoes. Do you think he could? A. No, I don't. I don't think you can put a man in a brace for a year and expect him—a man who has arthritis, of his age, and his station of nutrition, as obese as he is—to reach over and tie his shoes. I don't doubt that statement. Q. Is that physical disability or mental? A. Well, it has become physical disability. * * * Q. Well, you say this man never mentioned his back to you? A. That is right. Q. Isn't it true, however, that the day you left this case Dr. Blum came in and started immediate treatment to his back? A. That is right."

In like manner, the eminent physician who was called in by the company doctor as a consultant, and who with the company doctor had entire charge of the case for the first four days, testified:

"Q. And in other words, you and Dr. Witham suggested that this man's stomach be cut open and his stomach be explored to find out what was wrong? A. That is right. Q. And Dr. Blum came along and said, 'No, gentlemen, this isn't the thing to do?' A. Several hours after, too. Q. Several hours after, but the same day? A. Yes, sir. Q. And this man followed Dr. Blum's advice? A. Yes, sir. Q. And he has never had any surgery since, has he? A. He had relief right away, didn't he? Q. What is that? A. He had

relief right promptly? Q. You are answering the questions. He has never had any surgery since? A. No, sir. Q. And you don't recommend any surgery today? A. Absolutely not."

Another medical expert called by the defendant was Dr. J. E. M. Thomsen, whose cross-examination is as follows:

"Q. Doctor, you told us a lot about the back this morning. I want to confine my questions to one subject and that is, the thing you say that troubles this man now. You now say he has an osteoarthritis in his back? A. Yes. * * * Q. And you believe, do you not, that he has a disability in his back at the present time? A. Yes, I think he has some disability in his back at the present time. Q. You think you know definitely what the disability is from? A. Yes, in the back. Q. In the back? All right, what is your opinion, the wearing of the brace so long a time? A. No, I think it is because he has this extreme osteoarthritis. Q. You have no history in this case of this man ever laying off a day in sixteen years from arthritis, have you? A. No, sir. Q. Yet, as I understand it, you now say that the disability now is because of the osteoarthritis? A. I believe he has a disability in his back due to osteoarthritis. Q. Doctor, do you mean that the disability from his osteoarthritis has become manifested since November 27, 1937? A. I don't know."

Dr. Rowe, another medical expert, testifying in behalf of the defendant company, testified, in part, as follows (after being shown exhibits 35 to 44, inclusive, being X-rays of Maul's spine) : "Q. What do they show, just generally? A. My judgment is they show signs of arthritis, which is very common in men over 45 years of age; shows the exostosis or bony growth about the margin of the vertebræ, more particularly the lower dorsal and the lumbar area and chalky deposit in the ligaments in several places which may be seen between the portions of the vertebræ; also the signs of arthritis are present in the articular facets of the lateral portions of the vertebræ, and in addition there is definite signs of injury to the cartilage, which is caused by the arthritis. * * * Q. Well, now, does this man

have what you call an osteoarthritis? A. Yes. Q. Is that in itself always disabling? A. No, sir. Q. May it become disabling by a fall or twist of some kind? A. It may; yes."

The evidence conclusively establishes that Peter Maul for 16 or more years had put in his life at continuous hard labor. He had had an accident on November 27, 1937. At the time of the accident, and prior thereto, he had been afflicted with osteoarthritis, but it had not been disabling previously, but was latent in its characteristics. The real question is whether the accident was the exciting cause of the activation of the disease and hence his disability. There can be no question but that he was totally and permanently disabled at the time of the trial in the district court, and that his trouble was a back injury, though the medical evidence on this last point is in hopeless conflict.

In *Dymak v. Haskins Bros. & Co.*, 132 Neb. 308, 271 N. W. 860, it is stated: "The facts in the instant case invoke the application of the well-recognized principle, viz.: 'Injury from strain or overexertion due to a physical condition predisposing the employee to injury is an injury within the terms of the various workmen's compensation acts authorizing compensation for injuries, personal injuries, accidental injuries, or personal injuries by accident, even though had the person been sound in every particular the strain would not have been sufficient to cause his death or provoke any serious physical injury.' 71 C. J. 607. See, also, *Bunker v. Motor Wheel Corporation*, 231 Mich. 334, 204 N. W. 110; *Hackley-Phelps-Bonnell Co. v. Cooley*, 173 Wis. 128, 179 N. W. 590."

As already suggested, the expert medical evidence in this record is conflicting and irreconcilable. We are committed to the view that traumatic arthritis is compensable. *Flesch v. Phillips Petroleum Co.*, 124 Neb. 1, 244 N. W. 925. Also, that injury from strain accelerating a pre-existing weakened or diseased condition of the employee's back is compensable. *Dymak v. Haskins Bros. & Co.*, 132 Neb. 308, 271 N. W. 860. As a résumé it may be stated that on and prior to November 27, 1937, Maul had been continu-

ally engaged in hard labor. He was afflicted with osteoarthritis of his spine, but it had never been disabling. On that day he stumbled and fell, and the effect of his fall was accentuated by the weight that then rested on his shoulder. Dr. Rowe tells us that a spine which is subject to osteoarthritis may become disabling by a fall or twist of some kind. From the time of this fall on November 27, 1937, Peter Maul's disability has been continuous, and is evidenced in a manner consistent with the theories of his medical witnesses. These facts, in the light of the entire record, afford cogent reasons that strengthen the opinions of the expert witnesses as to the scientific facts in issue in the instant case, and tend to weaken opposite expert opinions not so supported, and determine the issue. *Flesch v. Phillips Petroleum Co.*, 124 Neb. 1, 244 N. W. 925.

It follows that we find the allegations of Peter Maul's petition to be established by a preponderance of the evidence in the record; that prior to the accident of November 27, 1937, he had been in good health, and the testimony supports the claim of latent osteoarthritis; and that the accident was the exciting cause of the activation of the disease which has resulted in total permanent disability, and entitled him to have and receive the award as originally made and entered in the workmen's compensation court.

Therefore, the judgment of the district court is reversed and the cause remanded, with directions to enter judgment in favor of Maul as herein determined.

REVERSED.

The following opinion on motion for rehearing was filed January 19, 1940. *Former opinion and judgment modified.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PER CURIAM.

This matter coming on to be heard upon defendant's motion for a rehearing addressed to the opinion hereto-

fore adopted in this case and reported *ante*, p. 128, 288 N. W. 532, we deem the opinion and judgment entered therein correct, except as to two items, as to which the opinion should be modified and judgment entered therein amended, viz.: (1) It appears that the average weekly wage of complainant Maul for six months immediately preceding the accident in suit was but $20, which would entitle him to an award of but $13.33 a week as compensation for the period as determined, and no more. (2) It also appears that the proof received in evidence on the trial in the district court as to bill for services rendered by Dr. Czar Johnson is insufficient to sustain the allowance thereof; that the same should be disallowed *in toto* and should not constitute a part of the award made.

Under the facts established by the record in this case, attorney fees on appeal for plaintiff's attorneys may not be allowed.

The opinion heretofore adopted and judgment entered therein will, therefore, be modified to conform to the determination here made, and, as thus modified, will be adhered to. The motion for a rehearing is denied.

JUDGMENT ACCORDINGLY.