CITY OF OMAHA, APPELLANT, V. JOHN J. CASAUBON, APPELLEE.

294 N. W. 389

FILED OCTOBER 18, 1940. No. 30966.

*Harold C. Linahan, W. W. Wenstrand, Edward Sklenicka* and *Alfred A. Raneri,* for appellant.

*Cranny & Moore, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

EBERLY, J.

This is an action under the workmen's compensation law. The district court, after trial and upon evidence adduced before it, found generally for the employee, John J. Casaubon, and against the employer, the city of Omaha; and further found specially that on or about the 10th day of March, 1939, John J. Casaubon was employed by the city of Omaha as a janitor and utility man at the City Emergency Hospital, and at that time, while so employed and engaged in the performance of his duties as such employee, he sustained and received an injury, when a ladder on which he was then standing, some nine feet from the floor painting a wall of the hospital, fell away and out from under him, precipitating him head first over and down against this wall on which he was working and down to and upon a metal trash can situated in the vicinity of the bottom of the ladder; that

in this fall his back in the area of the ninth and tenth thoracic vertebræ was severely bruised and wrenched, causing a compression fracture to the seventh, ninth, tenth and eleventh thoracic vertebræ and lighting up a preexisting arthritic condition in his spine; that as a result of said accident and the injury occasioned thereby the employee Casaubon was temporarily totally disabled from and after the 1st day of July, 1939, up to and including the present time, and will continue to be temporarily totally disabled in the future to a date not as yet ascertainable by the court at this time. The district court awarded compensation at the rate of $15 a week, required the city of Omaha to furnish the injured employee further medical care and attention, as provided by law, and allowed and directed the payment of certain bills for professional services furnished the employee. The appellant, on appeal, substantially presents the contention that the evidence is insufficient to establish the happening of the accident as asserted, or to sustain the claim of the employee that it arose out of and in the course of his employment; that the proof does not establish that the alleged fall caused the compression fracture of the vertebræ or lighted up a preexisting arthritic condition in claimant's spine; and that the award of $15 a week as compensation was excessive in amount.

We are unable to accept this contention. In consideration of the evidence in the record, it will be remembered that it is sufficient to show that the injury and preexisting disease combined to produce disability, and not necessary to prove that the injury accelerated or aggravated the disease, in order to satisfy the requirement that the accident arose out of the employment. *Gilcrest Lumber Co. v. Rengler*, 109 Neb. 246, 190 N. W. 578.

In the instant case, however, the evidence is uncontradicted that, while an arthritic condition of complainant's spinal column existed prior to the occurrence of the accident, it caused no pain or suffering whatever and created no noticeable impairment of the strength or use of that organ. But that after the injury claimant's suffering and

impairment immediately commenced and that the injuries received, the compression fracture, were ample cause of the same irrespective of the preexisting arthritic condition. In so far as conflicting evidence in the record may tend to negative or qualify the conclusion thus stated, it is to be remembered that, where evidence in workmen's compensation cases is conflicting, the supreme court, on trial *de novo,* may consider the fact that the district court gave credence to some witnesses rather than to others. *Hudson v. City of Lincoln,* 128 Neb. 202, 258 N. W. 398. Besides, the testimony of all parties is that the existence of a compression fracture to certain vertebræ of the spinal column is clearly established. Complainant's evidence as to the occurrence of the fall during the first days of March, 1939, is clear, direct, positive, and supported by circumstances. The employer's counter evidence on this subject, on the other hand, is negative, circumstantial and not convincing. The physical effects of the fractures and the natural disabilities arising therefrom, the existence of which is conceded, are really not controverted by the expert witnesses testifying. Assuming the view of the evidence most favorable to the appellant, the disability of claimant at least amounts to traumatic arthritis which, under the facts in this case, must be deemed to have arisen out of and in the course of the employment of the claimant and therefore compensable. *Maul v. Iowa-Nebraska Light & Power Co.,* 137 Neb. 128, 288 N. W. 532; *Dymak v. Haskins Bros. & Co.,* 132 Neb. 308, 271 N. W. 860.

Appellant further contends that the amount of the allowance is excessive, for the reason that, by the terms of his employment, this employee was to receive but $60 and board, lodging and washing; that the money value of the board, lodging and washing received not having been fixed by the parties at the time of hiring, it can afford no basis for the allowance of compensation. This contention involves two contentions, one of fact and one of law. The record, without contradiction, discloses the following testimony by Casaubon, viz.:

"Q. And what were your wages? A. Sixty dollars a month,

board, and room, and washing. Q. And you may tell the court if the mayor fixed any value of the board and room, and washing? * * * A. I went and saw Mr. Butler one day, and I asked him for a raise, and he told me just this, he says: 'Now, you are getting,' he says, 'at the rate of one hundred dollars a month right now, and we can't afford to pay any more.' He said: 'You are getting sixty dollars a month, and forty dollars for board, room and washing, which makes it one hundred dollars.' "

Now, there is no evidence in the record that claimant was employed by the city of Omaha for a definite term. So far as advised, Casaubon could terminate his services at his own option. But it does fairly appear from the above and the attendant circumstances that claimant accepted and relied upon the terms and conditions of his employment and the value thereof, as stated by the mayor, and continued his services on the basis thus communicated. In view of the entire situation, it may be properly inferred that claimant's job was originally set up and created by the municipal authorities on the basis of $40 a month as the money value of the board, lodging and washing to be received by the incumbent thereof. This fact had been properly communicated to claimant prior to his injury, and by his continuance in the work he had necessarily assented to the same.

The provisions of the governing statute are as follows:

"Wherever in this article the term 'wages' is used, it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, and shall not include gratuities received from the employer or others, nor shall it include board, lodging or similar advantages received from the employer, unless the money value of such advantages shall have been fixed by the parties at the time of hiring: Provided, that if the insurance carrier shall have collected a premium based upon the value of such board and lodging and similar advantages then the value thereof shall become a part of the basis of determining compensation benefits." Comp. St. Supp. 1937, sec. 48-126.

Good, J., in interpreting this legislative provision, in *Maryland Casualty Co. v. Geary*, 123 Neb. 851, 244 N. W. 797, says:

"Were it not for the statutory limitation above quoted, there would be no doubt that the meals and lodging furnished by the employer would constitute a part of the employee's weekly wage. It has been so held by many courts in states where no such statute existed. Among the authorities so holding are *Fowler v. Zellerbach-Levison Co.*, 1 Cal. I. A. C. Dec. 609; *Haas v. Globe Indemnity Co.*, 16 La. App. 180; *Baur v. Common Pleas of Essex*, 88 N. J. Law, 128; *Ciarla v. Solvay Process Co.*, 184 App. Div. 629, affirmed in 226 N. Y. 566. See, also, Honnold, Workmen's Compensation, p. 574.

"It has long been the policy of this state to give a liberal construction of the workmen's compensation law, so that its beneficent purposes might not be thwarted by technical refinement of interpretation. *McGuire v. Phelan-Shirley Co.*, 111 Neb. 609; *Baade v. Omaha Flour Mills Co.*, 118 Neb. 445; *Speas v. Boone County*, 119 Neb. 58."

Construing the statute under consideration with liberality, in accord with the principles announced in the *Geary* case, we are inclined to the view, in the light of the entire situation, that the evidence as an entirety sustains the conclusion that the money value of the board, lodging and washing that claimant was receiving at the time of the infliction of his injuries had been legally fixed by the parties at $40 a month, and was to be considered in determining the amount of his compensation, and that the judgment of the trial court on this point is not subject to attack.

It follows that the judgment of the district court is correct, and it is

AFFIRMED.