SKELLY OIL COMPANY, APPELLANT, v. DON GAUGENBAUGH, APPELLEE.

FILED MAY 2, 1930. No. 27350.

*Battelle, Morgan, Strehlow & Anderson, Cliff V. Peery* and *C. L. Swim,* for appellant.

*Dressler & Neely, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY and DAY, JJ., and FITZGERALD, District Judge.

EBERLY, J.

This action arises under the workmen's compensation law. Comp. St. 1922, secs. 3024 to 3084, inclusive, as amended. Appellee, Gaugenbaugh, was an employee of the Skelly Oil Company. He was hired in Omaha under a written contract of employment which was signed at the office of the Skelly Oil Company in that city. He selected as his territory the southwestern part of Iowa. He went out from Omaha to the territory during the week, returning on Saturday and Sunday, there attending meetings of instruction which were held under direction of the zone manager and for the promotion of the business in which he was engaged. A portion of his work, it appears, was actually performed in Omaha. He also did work in Nebraska for the company under this employment at Blair, Herman, Lincoln, and South Sioux City. His principal duties as a salesman, however, were transacted in Iowa, but the establishment maintained in the city of Omaha by the Skelly Oil Company constituted the base of operation, where its merchandise was stored, worked over, repaired, and shipped from, and through which the territory contiguous thereto, including plaintiff's Iowa territory, was actually served and supplied. In the course of this employment as a salesman at Harlan, Iowa, which was under the immediate direction and control of the company officials at Omaha, to whom the employee made daily reports, on the 20th day of May, 1929, while the employee, in the course of his duties, was lifting on a stove assisting in the installation of a skelgas outfit, he sustained an accidental injury, a strain, the result of which immediately appeared in the form of a hemorrhage in his right groin and leg. The employee upon the same day following was treated by an

osteopath in Harlan, Iowa, without affording any relief from the pain which he suffered, and thereupon returned to his Omaha home. The manager of the Skelly Oil Company business at that place, under whose directions he was working, had knowledge of this fact and of the cause thereof contemporaneous with his arrival at Omaha, and thereafter visited this employee in the hospitals from time to time during a long and dangerous illness following this accident. Expert physicians employed by defendant examined plaintiff and reported his condition to the employer.

To defeat the claim for compensation it was alleged in the district court that the disabilities of appellee were not caused nor contributed to by any accident, but were due wholly to purpura which was in truth an occupational disease; second, that no notice either oral or written of injury was given as prescribed by section 3056, Comp. St. 1922.

First, it is the theory of the defendant oil company that plaintiff's condition is due to purpura and in no manner due to his duties as an employee of the oil company. On the other hand, the employee's contention is that the inception of the condition was due to inhalations by the employee of skelgas during the course of his employment; that this was induced by the representations of the oil company to its agents and its patrons that the product was wholly harmless and contained no poisonous substances whatsoever and could be safely inhaled; that, relying thereon, as part of the demonstrations made by plaintiff as salesman for the defendant oil company, he from time to time, believing the representations made to be true and that skelgas was in truth and in fact wholly harmless, inhaled the same; that, as a result of the inhalations thus made, the poisonous effects of the gas produced an "unexpected and unforeseen event happening suddenly and violently, with or without human fault, and producing * * * objective symptoms of an injury" (Comp. St. 1922, sec. 3075) by causing a state of purpura to exist in plaintiff's circulatory system, and due to the condition thus created

the effect of the accidental strain suffered by the plaintiff on the 20th day of May, 1929, was to "light up," aggravate and accelerate the results of the previous accident, and to cause the serious condition which undoubtedly existed after his return to Omaha and his reception into the hospitals of that place. As this is a trial *de novo,* it may be said that it appears undisputed that the employee, plaintiff herein, in the course of his employment by the defendant, suffered from mercurial poisoning in February, 1929; that he was then examined by an eminent physician employed by the oil company whom the latter called as a witness in the present case. From the testimony of this physician it appears without question that in February, 1929, he examined the plaintiff, employee, and at that time there was no indication that employee was then suffering from purpura. From this and other testimony in the record we are constrained to find, as a matter of fact, that the condition of purpura which prevailed at the time of plaintiff's injury hereinafter referred to was a development of a date later than February, 1929. The testimony of the oil company's experts was restricted to the subject of the elements which together constituted skelgas. Of course, their testimony did not relate to the skelgas that had been actually inhaled by the employee. The testimony of the experts on behalf of the employee was as to the effect of the deleterious character of skelgas when applied to animal life, but that furnished no evidence as to the nature of the elements constituting the same. However, we find it unnecessary to determine whether skelgas was the active agent, the deleterious effects of which contributed to the condition of purpura which prevailed in the employee's body at the time of the accident on the 20th day of May, 1929, for we are convinced from a consideration of all of the evidence that on this date the plaintiff sustained a strain which was the immediate and the proximate cause of plaintiff's condition. If this be true, then we must accept as a fact that, notwithstanding the prior existence of purpura and the fact that it contributed to plaintiff's con-

dition at the time of the accident, the actual strain itself and its effects in "lighting up" and aggravating the condition which then prevailed constitutes a proximate cause, and that the plaintiff's condition as it existed after the accident and, as well, as it now appears is therefore the direct result of an injury arising out of and in the course of his employment. But under the facts in this case it is found unnecessary to determine whether the condition of purpura with which the plaintiff was afflicted was the result of accident or was to be classed as an occupational disease. Assuming, but not determining, that purpura from which plaintiff was suffering was properly classified as an occupational disease, to sustain a recovery it was sufficient to show that the injury, the strain, suffered and this pre-existing condition combined to produce the disability, and it was not necessary to prove that the injury, the strain, either "lighted up," accelerated, or aggravated the purpura to satisfy the requirement that accident arose out of the employment. The rule is: "Death or injury arising solely as the result of an occupational disease is not compensable under the workmen's compensation act; but, where the result is attributable in whole or in part to an accident, the fact that, but for the accident, the disease of which claimant died would be classed as occupational, will not prevent compensation, which in such case is awarded for the accident, not the disease." *Van Vleet v. Public Service Co.*, 111 Neb. 51. In other words: "It is sufficient to show that the injury and pre-existing disease combined to produce disability, and not necessary to prove that the injury accelerated or aggravated the disease, in order to satisfy the requirement that the accident arise out of the employment." *Gilcrest Lumber Co. v. Rengler*, 109 Neb. 246. This being true, the employee is entitled to compensation at the rate allowed by the district court, unless, because of lack of notice and failure to comply with the statute in this respect, his rights have been lost, and to that subject we will now address ourselves.

The appellant here has cited a large number of English

cases to the point that delay in giving notice, after the seriousness of the injury has become apparent, will generally be held to prejudice the employer in his defense. Section 3056, Comp. St. 1922, is the authoritative statute on this subject. This section contains the provision: "Want of such written notice shall not be a bar to proceedings under this act, if it be shown that the employer had notice or knowledge of the injury." A comparison of section 7 of the "Employer's Liability Act, 1880," volume VIII, Chitty's English St. (6th ed.) p. 777, which is the corresponding provision of the English act on this subject with the provision of section 3056, Comp. St. 1922, will disclose that, not only is there a material difference in the sections, but the provision last above quoted is not incorporated in the English act. Indeed, the difference is such as renders inapplicable the conclusions which might otherwise be drawn from the English cases cited by the appellant in his brief. It is quite apparent from the evidence that the employer's manager at Omaha was not only early advised of plaintiff's serious condition, but had actual knowledge of the facts and circumstances which actually caused the same, and thus clearly brings the case within the provision last above quoted which in effect renders a written notice unnecessary where the employer had actual notice or knowledge of the injury. We conclude therefore that the failure to give notice in this case, in view of the circumstances disclosed in the evidence, does not afford the employer any defense in this action.

The employer also contends that employee in this case was not under the terms of the Nebraska compensation act. In view of the record as an entirety there can be no question upon this point. It plainly appears that the work of the employee in this case was an incident to an industry which was substantially carried on at Omaha, Nebraska. At that point was created what might be termed a base for operations and constituted in truth and in fact an essential industry as contemplated by our compensation statute. *Bradtmiller v. Liquid Carbonic Co.*, 173 Minn. 481.

Both parties appealed from the action of the trial court in the allowance of a $300 attorney's fee. It will be observed that these services were performed in the presence of the trial court and no evidence as to their value was offered below. We have only the record as shown in the bill of exceptions, and from it appears no expert evidence produced in that tribunal relating to the value of the services performed. In the case of *Davis v. Lincoln County*, 117 Neb. 148, there was evidence in the record which was directed to the value of the attorney's services, and in that case we sustained the action of the trial court in an allowance based upon the record. In view of the absence of this class of evidence in the present record, we do not see our way clear to increase the fee allowed for services in the district court, but the allowance there made is approved. For services in this court, however, the majority of the court deem that $200 is a reasonable fee, and said amount is fixed and required to be paid the employee's attorney, thus making the total attorney's fees in the district court and supreme court $500. The allowance by the district court of the doctors' bills, hospital, and nursing bills, on account of said accidental injury, of $1,438.50 is approved, and the credits allowed the employer by the district court in the sum of $600 is also approved. The finding and decree of the district court in all respects is adopted as and for the judgment of this court, and in addition the employer will pay the sum of $200 attorney's fees in this court and the costs of appeal.

AFFIRMED.