BERT PALMER, APPELLEE, v. WILLIAM C. SAMPLE, APPELLANT.

2 N. W. (2d) 583

FILED FEBRUARY 20, 1942. No. 31277.

*Kennedy, Holland, DeLacy & Svoboda* and *Edwin Cassem,* for appellant.

*Gilbert P. Hansen, Donald S. Krause* and *R. B. Hasselquist, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

PAINE, J.

This is an appeal by the defendant in a workmen's com-

pensation case, in which plaintiff was awarded compensation for temporary total disability and thereafter for 40 per cent. partial permanent disability.

Lawrence F. Welch, one of the judges of the compensation court, awarded plaintiff the sum of $15 a week from January 11, 1940, to June 26, 1940, for his temporary total disability and also certain medical bills, from which award the plaintiff appealed directly to the district court for Douglas county.

After trial in the district court, plaintiff was awarded $11.91 a week from January 11, 1940, to December 2, 1940, a period of 46 5/7 weeks, for his temporary total disability, less the amount already paid, and thereafter the sum of $4.76 a week for a period of 253 3/7 weeks for his 40 per cent. partial permanent disability. It was also ordered that defendant should pay Dr. J. P. Drozda's bill of $96.50 and Dr. James Kelly's bill of $15. From this judgment, the defendant appealed.

The facts of the accident may be summarized from the bill of exceptions about as follows: The plaintiff, Bert Palmer, a married man, 51 years of age, had worked 21 consecutive years for defendant company, with but three weeks off. During all of that time the record shows that he only lost one day, or part of a day, for industrial disability, when a piece of steel went in his eye, but he was back at work the next day. He was an automobile repair man, who would install lights and reflectors, detach radiators and wheels, and straighten bumpers and fenders, and do the heaviest kind of lifting.

The plaintiff worked on both floors in the garage, but the lockers were upstairs. On the day of the accident, January 10, 1940, about 5:00 p. m. he was through work for the day, and had just gone upstairs and changed his clothes, putting on a leather jacket and a heavy overcoat.

While coming down the cement stairway, which had been scrubbed with caustic, plaintiff's feet slipped when he was about half way down, which jerked his hand from the handrail, and he struck right in the middle of his back, and

rolled the rest of the way down the steps. When he came to he was sitting on a box with Mr. Sample, the proprietor, and Mr. Milke, the foreman, and Mr. Rouie, the floor man, looking after him. He was dazed at first, but left the garage about 6 o'clock when they closed up, and when he got home his wife put hot towels on his back and put him to bed. The next morning they directed his wife by telephone to send him to Dr. Frank Conlin, and about noon they got down to the Medical Arts building, and Dr. Conlin made an examination and sent him to Dr. Fouts for X-rays. He then came back to Dr. Conlin's office and lay under a heat lamp for about an hour, then went home and went to bed. He came down to Dr. Conlin's office for a heat lamp treatment every day for some five weeks, missing only one or two days because the weather was bad, or it pained him too much to go down, and his wife continued the treatment at home with hot towels and oil of wintergreen.

In February Dr. Conlin told him that the insurance company wanted him to get back to work, and Dr. Conlin thought he could go back to work in two weeks, but his injury had not gotten any better, and he had lost 18 pounds and had pain, and went to Dr. Drozda, his family doctor, the next day after he quit going to Dr. Conlin. Dr. Drozda gave him an examination, massaged his back, put a heat lamp on it, and then sent him to Dr. Kelly for an X-ray, and at the time that the plaintiff testified in court he was still under Dr. Drozda's care. He has a heat lamp at his home, and his wife puts the lamp on and rubs his back almost every night. Dr. Drozda gave him concentrated cod liver oil and prescribed rich food to build back the 18 pounds he had lost, but at the time he testified he was still 15 pounds under his weight on the day of the accident.

At the time of the accident, business was very quiet and he was working solely on a commission basis, receiving one-third of the cost of each job on which he worked. He made $15 to $18 some weeks when business was dull, and other weeks from $25 to $40 a week, and has never returned to work since the accident.

Charles R. Weir, an employee of the Omaha police department, residing at 3025 Davenport street, saw plaintiff across their back yards almost daily after the accident, and in the summer time saw him sitting in the back yard with his back exposed to the sun, and he testified that plaintiff has been very inactive since the accident. Several other neighbors testified to the same effect, and recount that before the accident plaintiff had played baseball, and would swim and dive when out on picnics, and since the accident Mr. Buck testified that he has seen plaintiff's face break out into a sweat when he was just trying to get up out of a chair.

In the opinion of this court, there is no evidence whatever which casts the slightest doubt on plaintiff's evidence as to the exact time, manner, and result of his serious fall. There is no attempt on the part of the defendant to disprove the fall by calling as his witnesses Mr. William C. Sample, the defendant and owner of the garage, Mr. Milke, the foreman, or Mr. Rouie, the floor man, who were all standing around plaintiff when he came to after the accident.

The X-ray photographs disclose, according to the medical evidence, that plaintiff has for a long time had a dormant case of osteoarthritis of the vertebral column, and while plaintiff may not have known anything about it at the time, yet as a result of the fall there was set up an acute traumatic arthritis, which is the cause of his pain and his present disability.

This court has said: "Where an employee in performing the duties of his employment is accidentally injured by falling into water cooler than the atmosphere and continues to work in wet clothing and thus suffers a shock which reanimates a dormant disorder resulting in his death, his dependents are entitled to compensation under the workmen's compensation law." *Chatt v. Massman Construction Co.*, 138 Neb. 288, 293 N. W. 105.

And again: "It is sufficient to show that the injury and preexisting disease combined to produce disability, and not necessary to prove that the injury accelerated or aggravated the disease, in order to satisfy the requirement of the statute

that the accident arose out of the employment." *Skelly Oil Co. v. Gaugenbaugh,* 119 Neb. 698, 230 N. W. 688. See, also, *Gilcrest Lumber Co. v. Rengler,* 109 Neb. 246, 190 N. W. 578; *Dymak v. Haskins Bros. & Co.,* 132 Neb. 308, 271 N. W. 860; *Maul v. Iowa-Nebraska Light & Power Co.,* 137 Neb. 128, 288 N. W. 532.

The defendant has furnished the court as an exhibit three rolls of films, taken by Felber Maasdam, who is an industrial cinematographer, and took these movies through a telescopic lens from about a block away, for a few moments at a time, without plaintiff knowing that he was being photographed from a distance.

They show the plaintiff distributing some dirt from a small pail over his lawn on several different days, and rolling up the door of his garage, which, a neighbor testified, rolled very easily. He is shown raking up a couple of baskets of leaves, and picking up a quart bottle of milk, and carrying a small package of potatoes out of a potato market.

After giving this case a careful study, we have reached the conclusion that the accident happened as alleged; that the resulting trauma aggravated a latent disease in the plaintiff's dorsal vertebra, and as a result he has not been able to resume his former employment, which required heavy lifting.

Under all the facts in the record, including the medical testimony, we have reached the conclusion that a 25 per cent. partial permanent disability of $2.98 a week for a period of 253 3/7 weeks will be sufficient, and in all other respects the decree and award of the district court are affirmed at costs of appellant.

AFFIRMED AS MODIFIED.