CHRIS YAKAL, APPELLEE, V. HENKLE & JOYCE HARDWARE COMPANY ET AL., APPELLANTS.

16 N. W. 2d 531

FILED DECEMBER 8, 1944. No. 31855.

*Baylor, Tou Velle & Healey,* for appellants.

*George I. Craven* and *Buschenfield & Leffler, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

SIMMONS, C. J.

This is an appeal from a judgment of the district court granting compensation to the plaintiff under the workmen's compensation act. The appeal presents the question as to whether or not a heart condition resulted from an accident arising out of and in the course of plaintiff's employment. We affirm the judgment of the trial court.

Plaintiff in his petition in the compensation court alleged that he was employed as a truck driver by the Henkle & Joyce Hardware Company; that on April 2, 1942, he re-

ceived personal injuries, arising out of and in the course of his employment, when struck in the chest by a roll of wire; and that the injury aggravated an asthmatic condition, and proximately caused pneumonia and a dilation of the heart.

The defendants (the employer and its insurance carrier) answered, admitting the employment, denying that the plaintiff had sustained injuries entitling him to compensation under the workmen's compensation act, and alleging that plaintiff's disability was due wholly to natural causes and disease.

Trial was had before one judge of the compensation court. Plaintiff offered evidence as to his accident and wages. He offered no evidence that his disability was due to or traceable to his accident. Defendant cross-examined the plaintiff, and offered no other testimony. The hearing resulted in an order of dismissal.

A rehearing was had before the compensation court. The compensation court, among other things, found that plaintiff had received a blow from a roll of wire on the lower part of his chest, which "lighted up and activated dormant physical ailments," for which he was entitled to compensation benefits. An award was entered granting compensation to plaintiff.

From that order, defendants appealed to the district court for Lancaster county. The district court affirmed the award of the compensation court. Defendants appeal here from that judgment.

Plaintiff, a man 46 years of age, had worked for the defendant hardware company 19 years prior to the date of the accident on April 2, 1942. He had been a steady and a good workman. His work consisted of heavy manual labor, and he was not trained nor educated for other than that type of work.

In 1918 he had had a severe attack of influenza. Some years later he had an appendectomy performed. Sometime in the middle thirties, he had pain in his legs. He, at different times, had his tonsils and teeth removed and that

pain cleared. Following those operations he lost little time from work and during the years 1938 and 1939 lost no time from his work. He lost a week in January, 1940. The 1941 work record was not shown.

Plaintiff's fellow employees testified that he was a "heavy breather," and coughed frequently, noticeably in the winter. Plaintiff testified that in the wintertime he had "colds" resulting from alternating periods of work indoors and outdoors, and that during those periods he coughed and was short of breath.

About a year before the accident, plaintiff had a period of severe headaches for three weeks, occurring at night and requiring that he sit up to secure relief. He had no medical attention and these headaches ceased after three weeks. A similar period of headaches began in the latter part of March, 1942, and after a week plaintiff, on March 28, 1942, stopped working, and went to an eye, ear, nose and throat specialist. He was at that time in discomfort with a severe pain in the back of the head and neck. The specialist examined plaintiff with the stethoscope "a little bit," sent him to the hospital for X-ray pictures and instructed him to go home, go to bed and rest. On March 31 he again was treated by this specialist, his left maxillary sinus punctured and irrigated, and practically nothing found. The plaintiff was sent home to bed and told to "take it easy." He did so. The nose again was irrigated on April 1.

Plaintiff returned to work on the morning of April 2. About 11:00 a. m. of that day, a truck loaded with nails and wire, including rolls of "rabbit" wire, was docked for unloading. Plaintiff stood in the truck, at its rear end, and was directing the unloading of the wire. A roll of wire weighing 51 pounds was thrown from the front of the truck and struck plaintiff in the chest. The force of the blow was sufficient to cause plaintiff to throw his arms into the air in an attempt to maintain his balance, which he did not do, and he dropped some four feet to the pavement, landing on his feet. He was jarred out of breath, got onto

the loading platform, sat down for a time, and then resumed his work. He continued to work that day, and the day following, taking it easy. He felt pain in his chest and abdomen from the time of the accident. The pain persisted and became worse. He worked until noon of the third day (Saturday, the 4th), and then went to see the nose specialist. The nose again was irrigated and plaintiff was told to "see his family doctor." Plaintiff was then quite ill. Plaintiff went immediately to the office of a doctor in the same building, whom he had not previously consulted. This doctor, mistakenly it now appears, thought he had a fractured bone in the chest, taped him extensively and sent him home. The pain got worse. On the following day, the family doctor was called to the home, had the tape removed, diagnosed plaintiff's then condition as pneumonia, and treated him for it. Plaintiff was off work for two weeks.

He then returned to work for two weeks and a day. The pain continued. Plaintiff then went to a doctor whose specialty was surgery. This doctor diagnosed plaintiff's sickness as a heart trouble and sent him to a heart specialist, who examined him on May 3, 1942. This doctor found shortness of breath, pain in the chest, the heart "a little bit enlarged" and evidence of the pneumonia in the right chest. On May 8 the heart was found to be enlarged about one-fourth. On June 9, 1942, the heart was found to be considerably reduced in size and the cardiogram showed heart muscle damage.

It appears to be assumed by both sides that plaintiff had some bronchial trouble and asthma for some time prior to the accident, but the evidence is not at all satisfactory that plaintiff knew of such a diagnosis for his condition.

The heart specialist testified that in his opinion, plaintiff's pain after the injury was due to his trauma; that the trauma was a primary causative factor; and that "unquestionably * * * his heart condition was aggravated by his injury" or "lighted up even." This conclusion was sustained by a specialist in internal medicine and diagnosis who ex-

amined the plaintiff on November 6 and 7, 1942. Based on X-rays, cardiograms, etc., he gave it as his opinion that plaintiff had "myocardial damage" resulting from the accident and injury of April 2, 1942.

Defendants offered the testimony of a specialist in internal medicine and diagnosis, who made an examination of the plaintiff in the latter part of June, 1942. He testified as to the extensive examination he had made, the history considered, and expressed the opinion that plaintiff's accident and injury had nothing to do with his heart condition, and that the plaintiff's heart condition was the result of his heart being overworked in pumping blood through the diseased lungs. This witness appears to have based his opinion upon the existence before the accident of a more severe sinus and chest condition than the evidence supports, and, likewise, to have discounted appreciably the severity of the blow which the evidence shows plaintiff received on his chest.

Defendants also offered the testimony of the eye, ear, nose and throat specialist. This specialist testified that he was "not a heart specialist"; that plaintiff's heart was "irregular"; that he was "breathing very heavily" at the time of the examination on March 28, 1942; and that on March 31 the heart was "not what it should be" and the heavy breathing persisted. The conclusion of this specialist at the close of his examination and treatment was that the infection of the sinuses was not causing plaintiff any difficulty and that his heart condition was the result of something else. We have not overlooked the testimony of this specialist that he examined with the stethoscope on March 31 and found an irregular heart action. Plaintiff testified that the stethoscope was not used until the last examination on April 4. The weight to be given to the testimony of the nose specialist is minimized by a number of things. He was not a heart specialist. His examination of plaintiff's heart was incidental to the sinus examination and not exhaustive. It is noted that he did not testify that he at

any time advised plaintiff that he had a heart condition, and he did not advise plaintiff to see his "family doctor" until April 4, two days after the chest injury.

To sustain an award in a workmen's compensation case, it is sufficient to show that an injury, resulting from an accident arising out of and in the course of the employment, and preexisting disease combined to produce disability. *Gilcrest Lumber Co. v. Rengler,* 109 Neb. 246, 190 N. W. 578; *Skelly Oil Co. v. Gaugenbaugh,* 119 Neb. 698, 230 N. W. 688; *Chatt v. Massman Construction Co.,* 138 Neb. 288, 293 N. W. 105; *City of Omaha v. Casaubon,* 138 Neb. 608, 294 N. W. 389; *Palmer v. Sample,* 141 Neb. 36, 2 N. W. 2d 583.

We conclude that the plaintiff has established the facts necessary under the rule, and that his disability is compensable.

The judgment of the district court is affirmed.

AFFIRMED.